FREDERICK E. HUBBELL, an infant by guardian, etc., Respondent, *v.* THE CITY OF YONKERS, Appellant.

Plaintiff was riding along one of defendant's streets, the road-bed of which was thirty feet wide, macadamized and in good condition. On one side, where the street was graded up about twelve feet, there was a sidewalk ten feet wide, separated from the road-bed by a curbstone eight inches high. There was no fence, wall or other obstruction to guard the outer edge of the sidewalk. The horse attached to the wagon in which plaintiff was riding became frightened and commenced to shy, and, spite of the efforts of the driver, went over the curbstone and sidewalk and down the embankment, carrying the wagon and plaintiff with him. In an action to recover damages, for injuries received by plaintiff, it appeared that the street had been in the same condition since its opening, over ten years before, and, so far as appeared, no similar accident had occurred. *Held*, that defendant was not liable, that the accident was one of a class so rare, unexpected and unforeseen, defendant could not be charged with negligence for a failure to guard against it

*Kennedy* v. *Mayor, etc.* (73 N. Y. 365), *Macauley* v. *Mayor, etc.* (67 id 602), distinguished.

Also *held*, the principle was not altered by a provision in defendant's charter, giving it power, through its common council, "to compel or

cause the making and repairing of railings at exposed places in the streets," that as regards travel on the street this was not an exposed place.

*Hubbell* v. *City of Yonkers* (35 Hun, 349), reversed.

(Argued January 27, 1887, decided March 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department entered upon an order made February 10, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial. (Reported below, 35 Hun, 349.)

This action was brought to recover damages for personal injuries alleged to have been caused by defendant's negligence. The material facts are stated in the opinion.

*Joseph F. Daly* for appellant. There was no proof in this case of negligence on the part of the defendant. (*Moulton* v *Town of Sandford*, 51 Me. 127; *Titus* v. *North Bridge*, 97 Mass. 258; *Horton* v. *Taunton*, 97 id. 266; *Kennedy* v. *Mayor, etc.*, 73 N. Y. 368; *Mors* v. *Burlington*, 80 Ia. 438; 46 Am. Rep. 82.) Even conceding that the fright of the horse had nothing to do with the accident, the defendant, as far as the carriageway was concerned, omitted no duty which made it guilty of negligence. (*Perkins* v. *Fayette*, 68 Me. 152; *Dougan* v. *Champlain Trans. Co.*, 56 N. Y. 1; *Cleveland* v. *N J Steamboat Co.*, 68 id. 306; *Loftus* v. *Union Ferry Co.*, 84 id. 455; *Ring* v. *City of Cohoes*, 77 id. 83, 90.) The common council of the city of Yonkers, when it adopted the plans for the construction of this street, and determined that no railing was necessary at the place where the accident occurred, performed a judicial act, and for any error of judgment on the part of the common council, as to what the public safety required, the city of Yonkers is not liable. (*Mills* v. *City of Brooklyn*, 32 N. Y. 489; *Hines* v. *Lockport*, 50 id. 236; *Urquhart* v *City of Ogdensburgh*, 91 id. 67; *Lansing* v. *Tooling*, 37 Mich. 152; 16 Alb. L. J. 164; *City of Detroit* v. *Beekman*, 34 Mich. 125; *Cain* v. *City of Syracuse*, 95 N. Y. 83.)

*Malcolm F. Keyes* for respondent. The provisions of the charter requiring the city to compel or cause the making and repairing of railings at exposed places in the streets are, in legal effect, mandatory, though permissive in form, and made it the duty of the common council to erect, or cause to be erected, a railing along the embankment. (Laws of 1881, chap. 184, tit. 6, § 6, subd. 16; id. tit. 7., §§ 1, 2, 3, 14; id. tit. 11, § 2; *Hutson* v. *Mayor, etc.,* 9 N. Y. 193; 1 Kent, 467; 5 Cow. 188; 22 Barb. 404; *Hines* v *City of Lockport,* 50 N. Y. 236.) It is the duty of municipal corporations to protect exposed places in the street by suitable railings or guards. (*Leyman* v *Amherst,* 107 Mass 339; *Britton* v. *Cummington,* id. 347; *Bliss* v *Deerfield,* 13 Pick. 102; *Hunt* v. *Pownal,* 9 Vt. 411; *Gillespie* v *City of Newburgh,* 54 N. Y. 468; *Macauley* v *Mayor, etc,* 67 id. 602; *Kennedy* v. *Mayor, etc.,* 73 id. 365.) The fact that the accident happened outside of the traveled roadway, and outside of the curb and gutter, does not relieve defendant of liability. (*Hyatt* v. *Trustees of Rondout,* 44 Barb. 385; *Rice* v. *Montpelier,* 19 Vt. 470; *Kelsey* v *Glover,* 15 id. 708; Ang. on High. §§ 262, 295, 297.) A failure to provide safeguards is justly held to be negligence, and the town, village or city in default is liable in damages to one suffering injury from such negligence. (*Conrad* v *Village of Ithaca,* 16 N. Y. 158; *Storrs* v. *City of Utica,* 17 id. 104; *Hover* v. *Barkhoof,* 44 id. 113; 2 Dillon, §§ 778, 780, 788, 789.)

PECKHAM, J. The plaintiff sustained an injury by falling over an embankment, while out riding in the city of Yonkers, and recovered damages in the trial court against the city for its negligence in the treatment of the street or highway of the city where the accident occurred. There is substantially no dispute about the facts upon which the defendant's liability is based, and briefly they are as follows: Linden street is a street in the city, running north and south, the road-bed in which was at the time in question macadamized along its entire width of thirty feet and was in good condition. Side-

walks were placed on each side of the road bed, ten feet wide, and separated from it by a curbstone eight inches high. On the west side of the west sidewalk there was an embankment at one point of the street, of about twelve feet deep, running some number of feet along the sidewalk, and not guarded by any fence, wall or other obstruction. It had been in this condition for ten or more years, or ever since the laying out and opening of the street, and, so far as appears in the evidence, the accident in question was the first that had ever happened of such a nature. The accident happened on the 26th of May, 1883, about six o'clock P. M., and while it was daylight. The way in which it occurred may be told in the language of the plaintiff: " On the day of the accident I was going up the street and met my cousins, who were getting ready to take a drive, and as they were going down to the village I thought I would ride rather than walk. They drove south on Waverly street to Park Hill avenue, and then up the hill to Linden street, and when we got along Linden street there was a bicycle came along and the horse became frightened at it and commenced to shy, and in trying to pull him away from there it pulled his head so that the blinds hid the embankment or stone wall, and in so doing he stepped off one foot, and the two young men were on the opposite side from the wall and they had a chance to get out, but I had no chance and I went over, and that was the last I remember until," etc. They were going north, and, consequently, had this embankment on their left. Another witness for the plaintiff makes it, perhaps, a little plainer. He said : " I met a bicycle. I was driving, and my horse commenced to shy off and I tried to pull him on the right side of the street, but in spite of me he crowded off to the left. * * * The other young fellow that was in the wagon with me grabbed hold of the lines and helped me to pull, but we could not pull him to the ——. In spite of us he ran off the bank. He did not run any considerable distance. He just shied right out and went off the bank. It was all very sudden. It was very quick ; it could not be over ten seconds. I was in

the middle of the wagon, Mr Hubbell on the left side (west side) and Brodt on the east. Brodt jumped out as we went over the curb, and I jumped out as the horse jumped off the walk. Hubbell tried to jump out but did not have time. Horse, wagon and Hubbell all went over the embankment together." In regard to the horse, the last witness said: " I have always driven the horse; he belonged to me. I met bicycles before and he never minded them. The bicycle came upon us suddenly. I saw it not very far ahead. * * * I did not think the horse would run out at all and had no reason to believe that the horse would be frightened at it. Linden street is much traveled, and has been for these years, as far as I know."

Upon this evidence there can be no valid claim of any negligence on the part of the plaintiff, who was a young man of twenty years, nor upon the part of the driver of the wagon.

The only issue in the case arises as to the defendant's negligence. The city is not an insurer of the safety of persons traveling its streets, nor is it bound to furnish an absolutely safe and perfect highway under all circumstances. It is bound to exercise active vigilance towards keeping its streets in proper repair, and still a street may be out of repair and no liability exist against the city therefor, depending upon the question whether the city had failed to exercise that active vigilance, which it was its duty to do. Here was a roadway in first rate condition for its entire width (thirty feet), and bounded on each side by a curb eight inches in height, and then separated from this western embankment by ten feet more of sidewalk. Can it be fairly maintained that there was any lack of that vigilance demanded from a city, in failing to fence this embankment from horses traveling on the road, which should at that particular spot become frightened and unmanageable, and should then rush over the curb-stone and across the sidewalk and jump down this embankment? We think not. We are of opinion that this was one of that class of accidents, whose occurrence is so rare, unexpected and unforeseen, that to hold the city respon-

sible for a failure to guard against it, is to hold it to a most extensive liability, and to cause it to become substantially an insurer against any accident which human care, skill or foresight could prevent. This is a higher degree of responsibility than the law exacts. The very fact that for ten years or more, this embankment had been in the same condition, and that, so far as appears, no similar accident had occurred, is most cogent evidence of the lack of any negligence on the part of the city in failing to guard this spot. It is upon this principle that several cases have been decided in this court, even with reference to carriers of passengers, in which case the law exacts a higher degree of care than it does in the case of municipal corporations in relation to their highways. That which never happened before, and which in its character is such as not to naturally occur to prudent men, to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency. (See, on this subject, *Dougan* v. *Champlain Transportation Co.*, 56 N. Y. 1; *Cleveland* v. *Steamboat Co.*, 68 id 306; *Loftus* v. *Union Ferry Co.*, 84 id. 455.)

This is unlike the cases of *Kennedy* v. *Mayor, etc.* (73 N. Y 365), and *Macauley* v. *Mayor, etc.* (67 id. 602). In the first case it was very properly argued that the absence of the string piece on the dock, was a plain neglect to do what ordinary prudence would suggest as proper in fulfillment of the duty of the city, to keep the dock in a safe condition, and that its absence was the proximate cause of the injury. This court held that in deciding the question arising upon granting a motion for a nonsuit, it was to be assumed that it was the duty of the city to put a string piece upon the dock, and that it had negligently omitted to perform it, and that there was no negligence on the part of the plaintiff in the management of the horse and cart. This was to be assumed because the evidence upon the question was such as to require its submission to the jury, instead of being passed upon adversely by the court,

The case of Macauley was where the negligence of the defendant caused the fright of the horse, and the fact that the horse was momentarily by fright beyond the control of the driver did not, as matter of law, excuse the defendant's negligence which caused the injury.

In both cases the injury resulted from a cause which the court said might be held by the jury to be the neglect of the defendant to perform its duty, while in this case we cannot see that as to drivers on this street there was any duty to fence this embankment, or that a failure to fence could be construed as negligence on the part of the city, for the reason already given, that an accident of this nature, caused by an unruly or uncontrollable horse, was such a remote and improbable occurrence that negligence could not be founded upon a failure to foresee and guard against it.

The principle is not altered by the special provision contained in the charter of defendant, giving it power through its common council "to compel or cause the making and repairing of railings at exposed places in the streets."

"Exposed places," with reference to such a case as this, must mean "dangerous places," and considering the facts in this case, we do not think this was such a dangerous or exposed place that a failure to guard it with railings could fairly be called negligence.

The cases cited by plaintiff's counsel as to the duty of a town or city to guard the edge of a road passing along a precipice, do not control the decision of this case. Those are cases where the roadway itself runs along such a place and danger from the want of a railing was naturally to be apprehended, while here the roadway was perfectly safe, in first-class condition, bounded by a gutter or curb-stone eight inches high and ten feet of sidewalk, and where no danger from the embankment was possible until the horse should leave the road, drag his wagon over this curb-stone and sidewalk and then fall over the "exposed" place. This could not be done unless voluntarily or by reason of the fright of the horse making him uncontrollable, and as to the latter contingency

we have already discussed it.    The same reasons prevail as to railings on a bridge, for their absence would strike everyone as a plain, if not criminal, neglect of even ordinary care.

We think this accident was such a remote contingency that a failure to guard against it was not negligence, and it was error to submit the question to the jury.

The judgment should be reversed and a new trial ordered, costs to abide the event

All concur except DANFORTH, J., not voting.

Judgment reversed.