MARVIN LANE, as Administrator, etc., Respondent, *v*. THE TOWN OF HANCOCK, Appellant.

Under the act of 1881 (Chap. 700, Laws of 1881) transferring the primary responsibility for injuries to persons or property resulting from defects in highways from commissioners of highways to the towns, the negligence of the commissioner is still the basis of liability, and a town is now only liable for neglect of its commissioner in a case where he would have been liable had the injury occurred prior to the passage of the act, and where the negligence of the commissioner was such as to render him liable, under the act, to the town for a recovery had against it. To impose the liability it must be shown that the proximate cause of the injury was an omission on the part of the commissioner to use ordinary

care under all the circumstances in the performance of his duties, *i. e.*, such care as a reasonable and prudent person would ordinarily have exercised under those circumstances.

In an action against a town to recover damages for the death of plaintiff's intestate, alleged to have been caused by a defect in one of its highways. these facts appeared· There are about 230 miles of road in the town, eighty of which are along dugways and up steep ravines. The road where the accident occurred passes through a mountainous wooded section, used mainly for drawing heavy loads of lumber and wood, and for a distance of five miles but two or three families live upon it. The road was built about twenty years previously and was properly constructed; it ran along the side of a steep hill with a retaining wall along the lower side, and on top of the wall, guards consisting of logs about sixteen inches in diameter were placed. The water from a spring on the hillside above was conducted across the road by means of a waterbar and was discharged over the retaining wall. The road at this point, which was at the foot of the hill, was nearly on a level; it had become filled up to the top of the guard, or nearly so; the roadbed was from twelve to fifteen feet wide, and from the upper to the lower side there was a slope of about eighteen inches. The lower wagon track was about four feet from the guards. The road had been in this condition about eight years, and no accident had previously happened. Previous to. the accident ice had formed upon the waterbar, and shortly before there had been an extraordinarily severe snow storm. The snow had drifted deeply into the road and was soft from thawing ; the lower sleigh track had worn down to a few inches from the guards. The deceased came down the hill on a load of logs on two bobs. The ice and snow caused the rear bob to slide, its lower runner went over the wall, the load was overturned and the deceased killed. *Held*, that the evidence failed to show actionable negligence on the part of the commissioner of highways, and that a refusal to non-suit was error.

*Lane* v. *Town of Hancock* (67 Hun, 623), reversed.

(Argued April 19, 1894; decided June 5, 1894.)

APPEAL from judgment of the General Term of the third judicial department, entered upon an order made February 15, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Isaac H. Maynard* for appellant. The plaintiff's evidence failed to show that the death of the decedent was caused by

the negligence of the highway commissioners; the defendant's liability was, therefore, not established, and its motion to dismiss the complaint and for a non-suit should have been granted. (*Maxim* v. *Town of Champion*, 50 Hun, 88; *Bryant* v. *Town of Randolph*, 133 N. Y. 70; *Glazier* v. *Town of Hebron*, 131 id. 447.) The alleged defect in the road was not the direct cause of the injury. Several other causes were concurrent in producing it. (*Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Harrington* v. *City of Buffalo*, 121 id. 147; *Searles* v. *M. R. Co.*, 101 id. 661.) If there was any defect in the road where this accident occurred it was the duty of the overseer of highways for the district, or the pathmaster, as he is commonly called, to remedy it, and the defendant is not liable for any neglect of duty of that officer. (*McFadden* v. *Kingsbury*, 11 Wend. 667.) The death of plaintiff's intestate was manifestly due to her own carelessness and neglect. (*Gray* v. *S. A. R. R. Co.*, 65 N. Y. 561; 6 Wait's Act. & Def. 588, 589; *Reynolds* v. *C. & H. R. R. R. Co.*, 58 N. Y. 248; *Munger* v. *T. R. R. Co.*, 4 id. 349; *Claflin* v. *Mayor, etc.*, 75 id. 260; *Hall* v. *Smith*, 78 id. 480; *Wiwirouski* v. *L. S. & M. S. R. Co.*, 124 id. 420; *Craig* v. *M. R. R. Co.*, 103 id. 669.) The complaint is defective and wholly insufficient, and fails to state a cause of action, since it contains no allegation or averment that the commissioner of highways of the defendant, the town of Hancock, had been furnished with funds sufficient to repair the highway in question, or had neglected to take necessary and proper steps to procure such funds. (*Eveleigh* v. *Town of Hounsfield*, 34 Hun, 140; *Bartlett* v. *Crozier*, 17 Johns. 438; *People* v. *Adsit*, 2 Hill, 619; *Babcock* v. *Gifford*, 29 Hun, 186; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297; *Hoover* v. *Barkhoff*, 44 id. 113; *Wright* v. *Smith*, 23 Barb. 621; *Hutson* v. *City of N. Y.*, 5 Sandf. 315; *Clapper* v. *Town of Waterford*, 131 N. Y. 382, 383; *Briant* v. *Town of Randolph*, 133 id. 75; *Boehm* v. *Mace*, 45 N. Y. S. R. 285; *Barker* v. *Loomis*, 6 Hill, 463; *People ex rel.* v. *Bd. Suprs.*, 93 N. Y. 393; *Hines* v. *City of Lockport*, 50 id. 236; *Monk* v. *Town of New*

*Utrecht*, 104 id. 552; *Mandeville* v. *Reynolds*, 68 id. 528.)
The evidence establishes the fact that the commissioners did
not have funds, or the power or ability to obtain funds, with
which to repair this road. (*Garlinghouse* v. *Jacobs*, 29 N. Y.
297; *Hoover* v. *Barkhoff*, 44 id. 113; *Monk* v. *Town of
New Utrecht*, 104 id. 552; *Clapper* v. *Town of Waterford*,
131 id. 382; *Bryant* v. *Town of Randolph*, 133 id. 75.)
The roadbed and fenders were in the same condition at the
time of the accident as when turned over and accepted by the
commissioners of highways, and were constructed in accordance
with plans and specifications adopted by such commissioners.
The defect, if any, in the location and construction of the road-
bed, or in the fenders or barriers, was incident to the plan of the
road, and constituted simply a defect in the plan of the work
arising from an error in judgment as to its necessity. For
such error, it is well settled that no liability arises. (*Urqu-
hart* v. *City of Ogdensburg*, 91 N. Y. 67; 97 id. 238; *Monk*
v. *Town of New Utrecht*, 104 id. 522; *Williams* v. *Grand
Rapids*, 59 Mich. 51; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297;
*Medina* v. *Perkins*, 48 Mich. 67.) The court erred in refus-
ing to allow the defendant to show the condition of the roads
generally at the time of the accident in that town and vicinity
by reason of the "great blizzard" of March twelfth. (*Medina*
v. *Perkins*, 48 Mich. 67; *Evanston* v. *Gunm*, 99 U. S. 660.)
It was error to allow the plaintiff to show that repairs and
changes had been made in this road at the point where the
accident occurred after the time when the injury complained
of was occasioned. (*Corcoran* v. *Vil. of Peekskill*, 108 N. Y.
636; *Dongan* v. *Champ. Trans. Co.*, 56 id. 1; *Morrell* v.
*Birdsal*, 22 Wkly. Dig. 530; *Clapper* v. *Town of Water-
ford*, 131 N. Y. 389.) It was error for the court to refuse to
allow the defendant to produce evidence showing the bias and
interest of the witness John S. Hoolihan. (*Shultz* v. *T. A.
R. R. Co.*, 89 N. Y. 242.) The court erred in refusing to
allow an answer to the following question to plaintiff's witness
Dunn : Did you call the attention of the commissioners to the
fact that there was anything that should be done to the road

at that point? (*Pringle* v. *Woolworth*, 90 N. Y. 502; *McFadden* v. *Kingsbury*, 11 Wend. 667.)

*T. F. Bush* for respondent. It is the general rule that the verdict of a jury settles in favor of the prevailing party all of the questions of fact litigated upon the trial. (*Wolf* v. *G. F. Ins. Co.*, 43 Barb. 400; *Miller* v. *Lockwood*, 32 N. Y. 293; *Hyott* v. *Vil. of Rondout*, 44 Barb. 386; 41 N. Y. 619; *Warren* v. *Clement*, 24 Hun, 472; *Babcock* v. *Gifford*, 29 id. 187.) The road was good down to the place of the accident, and the plaintiff's intestate had a right to assume in the absence of notice that it was safe. (*Bidwell* v. *Town of Murray*, 40 Hun, 195; *Weed* v. *Vil. of Ballston Spa*, 76 N. Y. 329.) It is not incumbent on the plaintiff to allege or prove funds in the hands of the commissioners of highways. The want of funds or the means to obtain them is a matter of defense. (*Hoover* v. *Barkhoff*, 44 N. Y. 113, 118; *Heines* v. *Lockwood*, 50 id. 236, 238, 239; *Lament* v. *Haight*, 44 How. Pr. 1–4; *Warren* v. *Clement*, 24 Hun, 472; *Babcock* v. *Gifford*, 29 id. 189; *Bidwell* v. *Town of Murray*, 40 id. 190, 196; *Weed* v. *Vil. of Ballston Spa*, 76 N. Y. 329, 335; *Bryant* v. *Town of Randolph*, 133 id. 70.) It does not appear that the commissioners of highways of the defendant had made any effort to raise money for the improvement of this road. (*Hoover* v. *Barkhoff*, 44 N. Y. 113; *Warren* v. *Clement*, 24 Hun, 472, 474.) The commissioners grossly neglected their duty in not ascertaining the condition of this road at the place of the accident. (*MacVey* v. *Town of Locke*, 28 N. Y. S. R. 271.) If the court should hold that it was necessary for the plaintiff to show that the commissioners had funds sufficient for the purpose of putting this road in a safe condition it is submitted that the court committed no error in admitting such evidence under subdivision 5 of the complaint. (*Lament* v. *Haight*, 44 How. Pr. 1.)

O'BRIEN, J. The plaintiff was the husband and is the administrator of Sarah A. Lane, who was killed on the 28th

of March, 1888, by an accident resulting, as is claimed, from a defect in one of the public highways of the town. It is claimed that the defendant is responsible for the damages resulting from the death, and this action was brought to enforce the liability. The plaintiff recovered a verdict for $1,000 upon which judgment was entered and it has been affirmed at the General Term. By chapter 700 of the Laws of 1881, the primary responsibility for injuries to person or property resulting from defects in the highways was transferred from the commissioner of highways to the town. The negligence of the commissioner is still the basis of the liability, and the town is now liable for his neglect only in the cases where he was liable himself before the statute was enacted. He is still liable over to the town for any judgment recovered against it by reason of his negligence or want of care in the performance of the duties imposed upon him by the statute. So that now, as before, the inquiry is in regard to the conduct of the commissioner and the manner in which he has performed his duties. Actions to recover damages resulting from injuries caused by defects in the public highways are of comparatively modern origin. As late as the case of *Garlinghouse* v. *Jacobs* (29 N. Y. 297) the whole subject of the liability of the commissioner in such cases was elaborately examined, and it was held that he was not liable under any circumstances. Subsequently the court receded from this position in *Robinson* v. *Chamberlain* (34 N. Y. 389), and in the case of *Hoover* v. *Barkhoof* (44 id. 113) the liability of the commissioner for such injuries when resulting from his own negligence was asserted and established. Such actions are now quite common as indicated by the numerous cases to be found in recent reports. (*Ivory* v. *Town of Deerpark*, 116 N. Y. 476; *Maxim* v. *Town of Champion*, 50 Hun, 88; 119 N. Y. 476; *Bryant* v. *Town of Randolph*, 133 id. 70; *Clapper* v. *Town of Waterford*, 131 id. 388; *Glasier* v. *Town of Hebron*, Id. 447.) While, in theory, the town is not liable except in cases where the commissioner was or would be liable himself, yet it cannot be doubted that the

practical working of the statute has been to enable parties in some cases to recover verdicts against the town where none would have been rendered against the commissioner personally on the same facts. Although by the second section of the act the commissioner is made liable over to the town for any judgment that it has been compelled to pay in consequence of his misconduct or neglect, yet such actions are seldom if ever brought or if brought are not successful. In reviewing this judgment the liability of the commissioner as it existed before the statute, and as it now exists, when a recovery has been had against the town, must be held to be the true test. The judgment cannot stand unless the facts show or tend to show that the commissioner was guilty of such negligence in the performance of his official duty as would render him liable to the town for the judgment which has been recovered against it. Courts and juridical writers have often attempted to give a comprehensive definition of the term negligence as used in the law. But no definition has yet been given, and it is obvious that none can be given, accurate and comprehensive enough to apply to the varying facts and circumstances of every case. When applied to a commissioner of highways, and for all the purposes of this case it may be defined as the omission on his part to use ordinary care, under all the circumstances, in the performance of the duty imposed upon him by law, which was the proximate cause of the accident resulting in the death of plaintiff's intestate. Ordinary care in its application to this case denotes such care and conduct on the part of the commissioner as a reasonable and prudent person would ordinarily have exercised under the circumstances of the situation. (*Baltimore, etc., R. Co.* v. *Jones*, 95 U. S. 439.) In order to determine whether in this case the commissioner was guilty of negligence or exercised such care, the whole situation and all the facts and circumstances must be kept in view. There were three commissioners and upwards of two hundred and thirty miles of road, about eighty miles of which was along dugways and up steep ravines. There were one hundred and sixty-nine plank bridges

and several hundred sluices. The road where the accident occurred passed through a mountainous wooded section, and is used mainly for drawing heavy loads of lumber and wood, and but two or three families live upon it for a distance of some five miles. The road had been built more than twenty years before under contract, and accepted by the commissioners, and no claim is made that it was not properly constructed. It ran along the side of a steep hill, with a perpendicular retaining wall from four to six feet high along the lower side, and a dugway bank rising above it at the upper side. A spring of water came out of the hill at the upper side a few rods above the point where the accident occurred, flowed down the hill and was conducted across the road near the foot of the incline diagonally, by means of a waterbar, and discharged over the lower bank and retaining wall. This bar had been constructed about eight years before, and it is not claimed that it was in any respect defective or unsuitable for the purpose for which it was made. On the lower line of the road and over the retaining wall, guards or fenders, consisting of logs sixteen inches in diameter, were placed, leaving space enough for the water that was conducted across the road by the bar to be discharged without accumulating on the bank; but for a space of about twenty-five feet at the point of the accident the road had become filled up with earth, either by the working of the road or the action of water from the hill above, or from the waterbar, so that the surface was raised up to the top of the guard, or nearly so. This change in the surface had neutralized the utility of the logs for that space, at least to a great extent, as guards. The road at this point was from twelve to fifteen feet wide, and there was a slope from the upper to the lower side of about eighteen inches, the lower wagon track being about four feet from the log guards or fenders. The accident occurred at the foot of the hill, where the road was comparatively level. For twenty-five feet above the bar the fall is but one foot five inches, or one foot for every eighteen; and for sixty-eight below the bar the fall is only three feet, or about one in twenty-two.

Twenty feet above the bar the rise is more rapid, being about one foot in seven and a half, for about ten rods. It was not claimed that the commissioners, or any of them, had any actual notice of the defects in the road, if there were any, but the proof tended to show that the road was in this condition for about eight years before the accident, and the verdict was based upon the doctrine of constructive notice. Ice had formed upon the waterbar and upon the surface at the point where it was discharged over the bank caused by the freezing of the water from the spring. A short time before the accident there had been a very severe snow storm, which is familiarly known as the "great blizzard" of that year. On the day of the accident the snow that had drifted into the road over the dugway was deep and soft from recent thawing, and the lower sleigh track on the side of the road had gradually been worn or pushed down to within a few inches of the point where the guards or logs had been placed. This was due to the action of persons driving loaded teams seeking to avoid the deep ruts cut into the snow by the use of lock chains or brakes upon the runners of the sleighs. On the day of the accident the deceased, with the driver of the team, came down the hill to this point upon a load of logs loaded upon two bobs about sixteen feet long. There were three large logs, each about twenty inches in diameter, placed side by side and projecting about eighteen inches beyond the runner, and the upper runner of the hind bob was locked. The driver was sitting alone on the forward end of the logs and the deceased and her companion was seated upon the lower side. At the point where the bar crosses the road, being within a few inches of the bank, the natural slope of the road, the ice and snow upon the bar caused the rear bob to slide down to the edge of the bank, and the soft snow packed at that point gave way and the lower runner worked below the point where the log had been placed. The king bolt connecting the bobs gave way or came out and they became detached, the rear from the forward bobs, which remained in the road, the load was overturned, the driver and the other man jumped

off and escaped injury, but the deceased, incumbered as she was by her clothing, was crushed under the load. I have thus attempted to state the facts and circumstances leading up to the death of the plaintiff's intestate with some detail because they are important in the determination of the question of law. There may be and probably are some shades of difference in the statements of witnesses, but they are not material. The facts stated are substantially undisputed upon the record, and upon the argument there was no real controversy as to the facts established by the evidence. The learned counsel for the plaintiff rested his case upon the proposition that the absence of the log or guard at the place of the accident for the space of about twenty-five feet, due to the circumstances already stated, was the proximate cause of the death, and was evidence tending to prove negligence on the part of the commissioners, which was properly submitted to the jury. The elements which enter into the question of negligence are generally of such a nature as to make it a question of fact. Even where the general facts are not in dispute, as here, but the inference to be drawn from them is not clear and certain, but doubtful, the case must be submitted to the jury. But in every case there is always a preliminary question for the court as to whether there is any evidence upon which a jury could properly find a verdict for the party producing it, and upon whom the burden of proof is imposed. If there is not the court must direct a non-suit or a verdict as the case may require. (*Pleasants* v. *Fant*, 22 Wall. 116, 120; *Linkhauf et al.* v. *Lombard*, 137 N. Y. 417; *Hemmens* v. *Nelson*, 138 id. 517; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 47.) So that the practical question in this case is whether the commissioners were guilty of negligence in not observing the fact that a log fender placed upon the edge of this mountain road, passing through the woods, had been removed or had decayed, or its utility destroyed by the accumulation of earth or dirt on the surface from the cause referred to, or by its sinking below the roadbed from any other cause. Could a jury reasonably find that such a defect in the road for the time mentioned, without actual notice, was

actionable negligence under all the circumstances of the case?
The town was divided into numerous road districts, over each
of which an overseer was appointed under the law whose duty
it was to keep the roads in repair.   The country roads in this
state are maintained by local assessments upon the property
owners in the district either in labor or money, and the direc-
tion of the work is committed by the statute to the overseer.
The commissioners have, of course, supervisory charge, and
while it may be that the neglect of the overseer might not
excuse them, yet, in determining the question of their negli-
gence, the general system for the care of the highways con-
tained in the statute must be considered.   To keep all the
roads in a large town under constant personal inspection is
altogether impracticable, and necessarily the commissioners
must place some reliance upon the care and vigilance of the
local overseers in the several districts.   Then the extent of
the town, the character of the country, the climate and the
danger of accidents from the elements must be considered.
Giving due weight to all these elements entering into the
problem can it fairly be said in this case, conceding that the
absence of the fender was the proximate cause of the accident,
that the commissioners were guilty of such negligence as to
render them personally liable before the statute and now
liable over to the town for this judgment.   If so it is difficult
to imagine any case where an accident on a country highway
occurs resulting in death or personal injury that they would
not be equally liable, and this reasoning, carried to its neces-
sary and logical result, must prevent any prudent man from
accepting the office of commissioner of highways in any town
of the state, unless at the peril of financial ruin.   The judg-
ment in this case implies a measure of duty and liability upon
commissioners of highways far beyond anything contemplated
when the statute was passed, and beyond what it ought to be
in reason or justice.   These officers are a part of the system
of town government in this state.   Their compensation is
small, in some towns almost nominal.   It was never intended
that they should be obliged to devote their whole time to the

care of the roads in the town, and if they did they would not be able to prevent all accidents. No accident had ever occurred on this road before, and there was nothing to indicate that such an accident as this would be likely to occur. There was such a combination of circumstances, all concurring at the time to produce it, that no reasonable man could impute negligence to the commissioners because they did not foresee it in the absent guard or fender on the edge of the road. It would be exacting from a commissioner of highways such a degree of vigilance and foresight as would be impossible for the average man chosen to perform the duties of that office reasonably to attain. Such an accident followed by such results is so rare and unlikely to happen that it would be unreasonable to impute negligence to any one simply because he failed to foresee and guard against it. The limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all circumstances, even for those who use them properly. (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Glasier* v. *Town of Hebron*, 131 id. 447; *Moak* v. *Town of New Utrecht*, 104 id. 552; *Clapper* v. *Town of Waterford*, 131 id. 382; *Wilson* v. *Town of Granby*, 47 Conn. 59.)

The remarks of Judge PECKHAM in the case of *Hubbell* v. *City of Yonkers* (*supra*) apply with great force to the facts disclosed by this record. "That which never happened before, and which in its character is such as not to naturally occur to prudent men to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence, in not foreseeing its possible happening and guarding against that remote contingency."

It is not an unfair test of liability in this case to keep always in view the possible liability of the commissioners to the town in case it is obliged to pay the judgment. Are the commissioners who were elected a few weeks before this accident liable, or are their predecessors during the time that the road at the point of the accident was in the condition described, or are they all liable? None of them had any actual notice of the

defect, but the verdict of the jury indicates that all of them should have known that the log was absent. Although the jury have found that the town was liable solely through the negligence of the commissioners, it is not certain that even the same jury upon the same facts, in an action by the town against the commissioners, to reimburse itself for the loss occasioned by such negligence, would reach the same conclusion. It is obvious that unless the provision of the statute making the commissioner liable over to the town for his negligence in such cases is to remain a dead letter, as it probably has, one view of duty may be taken in actions by injured parties against the town, and quite a different view in actions by the town against the commissioners, whereas, in both cases the conduct of the commissioners should be measured by the same standard. We think that this is a case where the town could never be able to recover against the commissioners upon the facts disclosed by the record, and that a recovery ought not to be had, and, for the same reason, no recovery should be had by the plaintiff against the town. The proof was not sufficient to charge the commissioners with personal negligence in the performance of the duties imposed upon them by law, and the motion for a non-suit at the close of the case should have been granted. The verdict was extremely moderate in amount. Indeed it is out of all proportion to the unfortunate results of the accident if the defendant was liable at all. If no other interests were to be affected save that of the parties to the action, the verdict would have no significance beyond an expression of sympathy for the family of the deceased, in which, as individuals, we all share. The case, however, involves a principle of great public importance, far-reaching in its operation and effect, which must be determined by the application of settled rules of law.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except BARTLETT, J., not voting.

Judgment reversed.