(47 App. Div. 136.)·

## WYMAN v. ORR et al.

(Supreme Court, Appellate Division, Third Department.　January 8, 1900.)

1. DANGEROUS MACHINERY—WARNING EMPLOYE—PRIOR ACCIDENTS.

Evidence of the happening of accidents to other persons working about the machinery, under similar conditions and circumstances as attended the accident in question, was competent to show that the employer could reasonably have apprehended the happening thereof, and should therefore have guarded against it, or instructed the employés in regard to the danger, it not being apparent.

2. SAME.

A boy 15 years old was employed to remove broken pieces of paper from between two sets of rollers used for finishing paper in a paper mill. The rollers generated electricity as they revolved, which tended to draw the paper so gathered between them, of which such employé was not aware, and of which he was not warned.　While backing out from between the two sets of rollers, with paper so gathered, he was quickly jerked around, and his arms, with the paper, were drawn between the rollers. *Held*, that it could not be said, as a matter of law, that the accident was caused by an obvious danger, the risk of which the employé assumed.

Kellogg, J., dissenting.

Appeal from trial term, Rensselaer county.

Action by Charles M. Wyman, Jr., an infant, by Charles M. Wyman, his guardian ad litem, against Alexander M. Orr and others.　From a judgment in favor of defendants, plaintiff appeals.　Reversed.

The defendants are co-partners in the business of manufacturing paper, and own and operate a paper mill in the city of Troy, N. Y.　At the place where the accident hereinafter referred to occurred there was a paper machine, occupying a space, running from east to west, of about 50 feet.　At its east end was a vat, containing pulp, from which the paper was made.　This pulp was carried westerly over the machinery until it became a sheet of paper.　The last process in the manufacture of this paper, after it was dried, was smoothing or calendering it.　For that purpose it was passed through two sets or stacks of calenders, which consist of large cast-iron rollers, about 8 feet in length.　The first stack of calendars consists of three of these rollers, the lowest one about 18 inches in diameter, the second about 15 inches, and the next about 12 inches.　The second stack consists of seven of these rollers.　Each roller in the stack rests on the one below it.　The power is applied to the bottom roller, and its movement, by contact with the one above, sets them all in motion; the effect being, when the circumferences of the two rollers come together, to produce a similar movement in the opposite direction in the roller next above the one where the movement originated, and so on to the top of the stock.　The place where the circumferences of the two rollers meet is called the "pinch," and the office of the rollers is to press together and finish off or smooth the paper as it passes through.　A film of paper about eight feet wide is conducted into the nip or pinch between the two rollers of the first stack.　It descends around half of the first roller, when it is conducted into the next nip, and then around half of that roller, and then conducted into the next nip below.　Upon reaching the lower nip of the first stack of calenders, it passes from thence to the top nip of the large or second stack, and passes through that stack in the same manner as through the first, until it reaches the bottom nip, and is thence conducted to a reel, upon which it is wound as finished paper. The space between the first and second stacks of calenders is about 3½ feet. The calenders or rollers revolve with sufficient rapidity to calender from 180 to 200 feet of paper per minute.　In the operation of these calenders it is sometimes necessary to break the sheet or film of paper between the stacks for the purpose of readjustment, and sometimes the paper breaks itself, and falls to the floor between the stacks.　These pieces of paper are called "broke," and have to be removed from between the stacks, to prevent their getting in be-

tween the rollers, and thus interfering with the smoothing or calendering of the paper passing through them. This removal of "broke" is accomplished while the machinery is in motion, because, if the calenders or rollers are stopped, it necessarily stops the whole line of machinery. The plaintiff, a boy, who was 15 years of age on the 3d of May, 1896, was employed by the defendants on or about the 9th day of June, 1896. His duties were to pick up the "broke" or waste paper around the machine, and to sweep the floor. He had never been employed before around machinery of any kind. He was told to go between the two stacks or calenders, and pick up the "broke." That was the customary way of doing it. He continued this occupation, working during the daytime one week and the next week at nighttime, until the 6th day of July, 1896, at about 10 o'clock in the morning, when the accident occurred. He describes the transaction as follows: "There was a wad of paper lying between the two stacks of calenders to the north end of the stacks. I walked in there, and stooped over, and picked the paper up in my arms, and as I was backing out, bent over, I got to the south entrance of the calenders, when I was quickly jerked around, and the next thing I saw was the paper going through the calenders, and my arms with it." It appears that at the time the paper was running through the calenders in the manner before described, and passing from the lower nip of the first stack obliquely upward to the highest nip of the second stack, and it was necessary for him to stoop over in order to prevent his coming into contact with the sheet of paper so passing from stack to stack. As the result of the injuries received by him, both arms had to be amputated; one near the shoulder, and one just below the elbow. There were no guards to the machinery. The machine is of the kind ordinarily used in many, if not most, of the paper mills in the country, and was operated in the ordinary way. The plaintiff brought this action for damages for the injuries received. At the close of the evidence on both sides the court directed a verdict for the defendants upon the ground "that the dangers attendant upon the operation of these calenders were so evident and so obvious that, if they were not seen by the plaintiff, if they had not impressed themselves upon his mind, and he had not grasped the idea, in the length of time he worked, to think that a piece of paper caught between the calenders would be drawn in with irresistible force, then, as a matter of law, he was guilty of contributory negligence." The plaintiff asked to go to the jury upon various questions, among others: "Whether the defendants were guilty of negligence which contributed to this injury by reason of their failure to give any warning or instruction to the plaintiff of the risks or dangers which were attendant upon his employment, particularly around this machinery, and what risks he ran in working around this machinery;" and "whether the danger and risk attendant upon his work in and around this machinery was an obvious danger and risk,—obvious to a person of the plaintiff's age and judgment and experience,—so that the defendants could be said to be relieved of the obligation or duty of giving proper and sufficient warning and instruction." Other facts will be stated in the opinion. From the judgment entered upon the direction of the verdict the plaintiff appeals to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, KELLOGG, and MERWIN, JJ.

Wallace & Nolan (W. J. Roche, of counsel), for appellant.

John H. Peck and E. W. Douglas (Lewis E. Carr, of counsel), for respondents.

HERRICK, J. The plaintiff, when he entered upon the employment in and about the machine, assumed the ordinary risks and perils of that employment so far as such risks were apparent; and no duty rested upon the defendants to warn him as to, or instruct him how to avoid or guard against, unknown and not to be apprehended dangers,—that is, dangers not known to or to be apprehended by the defendants. It is contended upon the part of the plaintiff that there

was incident to the operation of the machinery by which he was injured a source of danger which was not obvious or apparent, which increased the hazard of the employment, which was unknown to the plaintiff, but known to the defendants, and as to which they gave him no warning or instruction. The claim of the plaintiff (appellant) is that, by the operation of the machinery in question, electrical currents were generated between the two stacks of calenders, which drew the paper he had gathered up into the "pinch" between the calenders, carrying his fingers with it, thus causing the injury from which he suffers; that the presence of such currents of electricity, and the danger to be apprehended therefrom, were unknown to him, were not apparent, and that he had never been instructed in relation to them. To support this theory, the evidence of various witnesses was given. If the case is to be retried, it is perhaps as well not to dwell in detail upon such testimony, but simply refer to its general purport. The plaintiff testified that after the happening of the accident he had a conversation with the defendant Alexander Orr, in which conversation Mr. Orr said "that there was a big tension that drawed the paper up to the calender rolls." This testimony of the plaintiff was not contradicted by the defendants. Evidence was also given to the effect that there was some force generated by the operation of the machinery that caused pieces of paper to rise from the floor towards the paper that was being calendered, and also attracted pieces of paper towards the "pinch" of the calender rolls, and that caused the hair of the workmen to rise up towards the paper that was being calendered as they passed between the stacks of rollers. The plaintiff, however, states that he never had seen any manifestation of this power, and knew nothing of it.

During the trial the plaintiff endeavored to show the happening of other, prior accidents in the same place to others engaged in the same occupation as was the plaintiff when he was injured, and for that purpose asked the following questions, among others:

"Q. While you were employed there, did you see any accident to persons being caught and maimed between the calenders or rollers on these machines? (Objected to as improper and incompetent. Objection sustained. Plaintiff excepted.) Q. Do you remember to have seen a boy drawn into the rollers on one of these machines while entangled in some paper, and mangled so that he died, before July, 1896? (Objected to as incompetent and improper. Objection sustained. Plaintiff excepted.) Q. Did you witness any accident prior to July, 1896, in connection with the operation of these calenders, and, if so, what was it? (Objected to as incompetent and improper. Objection sustained. Plaintiff excepted.) Q. I ask you if you were witness to an accident to a boy whereby he was caught—his paper and arms were caught—in between the revolving rollers of this machine? (Same objection, ruling, and exception.) Q. I ask you if you witnessed such an accident to a boy while he was engaged in the removal of 'broke' or paper between the two sets of calenders, whereby the paper and his arms were drawn in between these calenders, and he was maimed and crushed. (Same objection, ruling, and exception.)"

I have set forth the several preceding questions to give point to the last, and so that it may be understood what kind of an accident was there referred to. I think the question was proper, and the answer should have been received. Taken in connection with the statement made by the defendant Alexander Orr to the plaintiff, heretofore re-

ferred to, "that there was a big tension there that drawed the paper up to the calender rolls," it tended to show knowledge upon the part of the defendants of a reasonably to be apprehended or anticipated source of danger, as to which the plaintiff should have been warned and instructed. This is not the case of another accident happening in a known place of danger, or from an obvious and apparent source of danger, but of an accident which discloses the existence of a dangerous place,—one which discloses a source of danger. "Proof of the happening of a prior accident in the same place has frequently been held to be competent upon the ground that it tends to show that, tested by actual use, the place of the accident has been demonstrated to be unsafe and dangerous." Brady v. Railway Co., 127 N. Y. 46, 27 N. E. 368. It has been repeatedly held that the fact that an appliance, instrument, machine, or way has been used for a long period of time without the happening of any accident therefrom or thereon refutes the charge of negligence, because "that which never happened before, and which, in its character, is such as not to naturally occur to prudent men to guard against its happening at all, cannot, when, in the course of years, it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening, and guarding against that remote contingency." Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858; Loftus v. Ferry Co., 84 N. Y. 455; Burke v. Witherbee, 98 N. Y. 562; Cleveland v. Steamboat Co., 68 N. Y. 306; Crocheron v. Ferry Co., 56 N. Y. 656; Dougan v. Transportation Co., Id. 1; Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. 599. If the fact that a piece of machinery, appliance, or way has been used for a series of years without any accident occurring therefrom is evidence of a lack of negligence, and evidence that danger was not reasonably to be apprehended from the use of such instrumentalities, then it seems to me that the converse of that proposition must be true, and that evidence of the happening of accidents from the use of such instrumentalities under similar conditions or circumstances to the accident under investigation is competent upon the question of the defendants' negligence, and competent to show that the defendants could have reasonably apprehended the happening of such accidents, and that, therefore, it was their duty to guard against them, or to instruct their employés in regard thereto. I think, therefore, that evidence of prior accidents at the same place, happening under similar circumstances and conditions to the one in question here, was admissible.

This being an appeal from a judgment upon the direction of a verdict, the appellant is entitled to the most favorable inferences that can be drawn from the evidence given, and also from the evidence erroneously excluded. We must assume, therefore, that other accidents had happened prior to the one in question, by which persons employed in gathering up "broke" and paper in the manner in which the plaintiff was employed, and in the place where the plaintiff was employed, had their hands and arms drawn into the "pinch" of this machinery, as were the hands and arms of the plaintiff in this case. We have, then, this condition of affairs: A boy of 15 years, or thereabouts, employed to remove broken pieces of paper from between

revolving pieces of machinery, which machinery generated electricity, which has a tendency to draw the paper so gathered to the machinery. Prior to the happening of the accident in question, other persons engaged in a like occupation to the plaintiff, in the same place, while having the paper in their arms or hands, had the paper and their hands or arms drawn into the machinery, and so injured or crushed. The plaintiff could not see, and was not aware of, this source of danger, and was not warned thereof, or instructed in relation thereto; and while so engaged in his employment, after he had gathered up the paper in his arms, and was backing out of the space between the calenders, he was, to use his own language, "quickly jerked around, and the next thing I saw was the paper going through the calender, and my arms with it." It seems to me it was for the jury to say whether this accident was caused or induced by the current generated by the operation of the machinery; and I do not think that, under all the circumstances, taking into consideration the age and occupation of the boy and the nature of the force in question, the court can say, as a matter of law, that it was an obvious and apparent source of danger, the risk of which the plaintiff assumed.

For these reasons, the judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except KELLOGG, J., who dissents.