(59 App. Div. 12.)

BRUSH v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    March 8, 1901.)

1. MUNICIPAL CORPORATIONS — STREETS — DEFECTS — INJURIES — ACTION—EVIDENCE—SUFFICIENCY.
    Plaintiff's intestate, sitting on the front seat of an ice wagon, on the left side, handed the lines to his helper, a competent driver. The street was open to the public, but was not paved. The team was traveling at a fast walk. The helper was watching the team, and did not see a rut on the left-hand side of the track, and the wheel dropped into it, producing a jolt. The helper heard a scream, and, turning, found deceased under the wagon wheels; the front ones having passed over him, causing injuries from which he died. The rut was from 8 to 18 inches in depth, 2 or 3 feet in length, and 7 to 10 inches in width, and had been in that condition for a month or more. *Held*, that the evidence was sufficient to sustain a judgment for plaintiff.

2. SAME—DUTY OF CITY—PERFORMANCE—QUESTION FOR JURY.
    The street being open to the public, the city owed intestate the duty of using reasonable care to make the highway reasonably safe for the purposes for which it was dedicated; and whether the street, with such a rut in it, was in a reasonably safe condition, and the city had exercised reasonable care, were questions of fact for the jury.

3. SAME—PREVIOUS ACCIDENT.
    The fact that an accident had never been caused by the rut would not relieve the city from negligence in not guarding against it, since it should be foreseen that such a hole would sooner or later cause an injury.

4. SAME—CONTRIBUTORY NEGLIGENCE.
    The driver being on the right-hand side of the wagon, and not in a position to see the rut, which was not an obvious defect, plaintiff's intestate was not guilty of contributory negligence, as a matter of law, since he and the helper were not bound to anticipate the rut and its dangers, but only to exercise the degree of care called for by the kind of road over which they were traveling.

Appeal from trial term, Kings county.

Action by Ellen Brush, as administratrix of the estate of William H. Brush, deceased, against the city of New York, for the death of intestate. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Luke D. Stapleton, for appellant.
William Rand, Jr., for respondent.

WOODWARD, J. This action was brought by an administratrix to recover damages for the death of her intestate, alleged to be caused through the negligence of the city in permitting a street to be out of repair. On the 23d day of September, 1899, between 5 and 6 o'clock in the evening, while it was still light, the plaintiff's intestate, who was the driver upon an ice wagon, handed the lines to his helper, a man who had driven for 20 or 25 years, for the purpose of taking a chew of tobacco. The helper drove down Forty-Third street, in the borough of Brooklyn, and turned into First avenue. When 30 to 40 feet in this avenue, the driver of the team testifies that:

"I struck a rut or something, and went into a hole. I don't know what it was. And he went to put the tobacco in his pocket, and I went to hand him the lines over, and somebody yelled, and I pulled the team up; and he was in between the two wheels of the wagon."

Taking the view of the evidence which appears to have been taken by the jury, plaintiff's intestate was sitting on the seat on an ordinary ice wagon, on the left-hand side. He had handed the lines to his helper, who was a competent driver, and was engaged in taking a chew of tobacco. To do this, he reached around into his hip pocket; and, the last his helper saw of him upon the wagon, he was in the act of restoring the plug of tobacco to his pocket. The helper, who testifies that he was watching the team, to keep them out of trouble, did not observe that there was a rut on the left-hand side of the track in which the wagon was moving forward; and the front wheel of the wagon dropped into this rut, producing a jolt. Simultaneously the driver heard some one scream or "holler," and, on turning round to hand the lines to plaintiff's intestate, he discovered that he was off the wagon. Later he discovered the man between the wheels; the forward portion of the wagon having passed over him, producing injuries from which he subsequently died. One witness, who saw plaintiff's intestate at the moment of the accident, testifies that he "bounced" off; and there is sufficient evidence to support the conclusion of the jury that plaintiff's intestate came to his death by being thrown from the wagon on which he was riding, and while in the exercise of a reasonable degree of care, by reason of the wagon wheel dropping into the rut in First avenue. The defendant appeals from the judgment, and from the order denying a motion for a new trial, and urges various points with so much of ability, and which are combated with equal energy and insight into the law, that we are constrained to review the authorities.

The appellant urges that:

"The plaintiff can in no event prevail unless the claim be sanctioned that a municipal corporation is liable for damages in a civil action for injuries alleged to be caused by permitting to exist an indentation made by wagon wheels in the soft, sandy, or dirt surface of an unpaved, unimproved, road, which is in a state of nature, in a sparsely-settled, undeveloped, and remote part of a large city."

It is true, as urged by the appellant, that the defendant was not compelled to pave the street; but the authorities to which our attention is called—and they are numerous—concur in holding that where a power is conferred on public officers or a municipal corporation to make improvements, such as streets, sewers, etc., and keep them in re-

pair, the duty to make them is quasi judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc., and for a failure to exercise this power, or an erroneous estimate of the public needs, no civil action can be maintained; but when the discretion has been exercised, and the street or improvement made, the duty of keeping it in repair is ministerial, and for neglect to perform such a duty an action by the party injured will lie. Urquhart v. City of Ogdensburg, 91 N. Y. 67, 71, and authorities there cited; Seymour v. Village of Salamanca, 137 N. Y. 364, 368, 33 N. E. 304, and authority cited; Saulsbury v. Village of Ithaca, 94 N. Y. 27, 30. First avenue, in the borough of Brooklyn, was at the time of this accident open to the use of the public. It cannot be said, as a matter of law, that the municipality owed the plaintiff the duty of paving this street, nor yet that it owed him the duty of macadamizing it or of making any particular improvement; but it did owe him the duty of using a reasonable degree of care to make this highway reasonably safe for the purposes for which it was dedicated to the public (Beltz v. City of Yonkers, 148 N. Y. 67, 70, 42 N. E. 401), and it is usually a question for the jury whether this duty has been performed. There are no presumptions of negligence. It must be established by the evidence. But, where there is evidence from which the jury may properly and reasonably conclude that there was negligence, the plaintiff has a right to go to the jury. Morris v. Railway Co., 148 N. Y. 182, 185, 42 N. E. 579. When, in the case at bar, the plaintiff and defendant had agreed that First avenue, at the point where this accident occurred, was an unpaved, and, in a measure, unimproved, thoroughfare, they had placed before the jury the conditions necessary to inform them; and it was for the jury to say whether a rut from 8 to 18 inches in depth, 2 to 3 feet in length, and 7 to 10 inches in width, which had remained in that condition for a period of a month or more,—probably much longer,—was a reasonably safe condition for a street of this character, and whether the municipality had exercised a reasonable degree of care in the matter. The fact that some of the witnesses testify that there was a stone down in this hole does not alter the legal aspects of the case, nor complicate the question of fact. The question is whether there was a condition of the highway, at the point where this accident occurred, which the municipality, in the exercise of that reasonable degree of care which it owed to the plaintiff and the public generally, should have anticipated would produce this or other accidents to persons lawfully using the highway, or to their property; and there was evidence before the jury to enable them to determine this question.

This case does not come within the rule laid down in Hubbell v. City of Yonkers, 104 N. Y. 434, 439, 10 N. E. 858, and Glasier v. Town of Hebron, 131 N. Y. 447, 30 N. E. 239,—that where an accident is one which never happened before, and which, in its character, is such as not to naturally occur to prudent men to guard against its happening at all, it cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening, and guarding against the remote contingency. In both of these cases the facts were such that no one was bound to anticipate

an accident, while in the present case, if the jury believed the evidence in the strongest light in which it was placed, it could hardly be doubted that sooner or later some one must sustain an injury from such a hole in the highway. In the last-cited case, where a horse had backed a cutter down an embankment, throwing the occupants of the cutter into the water, the court say, "It is claimed from the evidence that in no other way than directly at right angles with the road could a horse and cutter be driven into or reach the pond from the highway;" and it was under these circumstances that the court held that the case came within the rule of Hubbell v. City of Yonkers, supra, which was a case where a horse ran over a curb line, across a sidewalk, and down an embankment on the other side.

We are of opinion that it cannot be said, as a matter of law, that the plaintiff's intestate was guilty of contributory negligence. The evidence indicates that he had turned over the team to his helper, who was a driver of experience. The helper testified that he was watching the team to keep it out of trouble, and, being on the right-hand side of the wagon, he was not in a position to see the rut on the left-hand side. It was not a conspicuous defect, so as to come within the rule that liability does not attach where the defect is known and obvious; and all that was required either of the helper or of plaintiff's intestate was that he should exercise a reasonable degree of care. They were not bound to anticipate this rut, with its dangers. They were only to exercise the degree of care called for by the kind of road over which they were traveling, and it can hardly be said that it is negligent to sit upon the seat of a wagon, prepared for that particular purpose, in passing along the highways of a great city, with the team in the hands of a competent helper, traveling no faster than a fast walk. We think this case comes within the rule suggested in Schafer v. Mayor, etc., 154 N. Y. 466, 472, 48 N. E. 749, 751, and that, "if he had survived the accident, it would have been necessary for him, in order to meet the burden of proof, to state what he did and what he tried to do, fully and explicitly; but, as he is dead, less evidence is required of his personal representatives." The facts and circumstances were before the jury. There was some evidence of an exercise of the degree of care which might be considered necessary under the circumstances, and we are not disposed to disturb the judgment. We have examined all of the authorities cited on the part of the appellant, and are unable to discover any ground upon which the case may be reversed. The charge of the learned trial justice stated the law fully, as favorably as the defendant had any right to expect, and, the evidence being such as to support the verdict, the judgment should stand.

The judgment and order appealed from should be affirmed, with costs. All concur.