## LUCAS v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, Third Department.   March 24, 1909.)

1. MASTER AND SERVANT (§ 276*) — INJURY TO SERVANT — CAUSE — EVIDENCE — SUFFICIENCY.

Evidence *held* insufficient to show that injury to a paper mill employé who was drawn into machinery was caused by electrical conditions or an air current.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 959; Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§ 155*)—DANGEROUS MACHINERY—INSTRUCTIONS TO EMPLOYÉ—NECESSITY.

The existence of suction created by rapidly moving machinery is a matter of common knowledge, concerning which one need not instruct his employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 310; Dec. Dig. § 155.*]

3. EVIDENCE (§ 597*)—WEIGHT AND SUFFICIENCY.

A verdict cannot be based on surmise or conjecture.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 597.*]

4. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—BURDEN OF PROOF.

The burden is on an employé suing for negligent injury to show that the accident was caused solely in the manner claimed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 897; Dec. Dig. § 265.*]

Chester and Kellogg, JJ., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Sidney Lucas against the International Paper Company. From a judgment for plaintiff, and from an order refusing to vacate the verdict, defendant appeals.   Reversed, and new trial granted.

See, also, 113 N. Y. Supp. 1137.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Henry Purcell, for appellant.

N. F. Breen and Fred A. Baldwin, for respondent.

COCHRANE, J.   This is an action by servant against master for personal injuries to the former due to alleged negligence of the latter. The negligence found by the jury consisted in not warning or apprising plaintiff of the existence of certain electrical conditions and air currents, by reason of which plaintiff claims he was drawn into rapidly moving machinery and injured.   Defendant was engaged in the business of manufacturing paper.   Part of the machinery consisted of two parallel sets of rollers separated by a distance of about 4½ feet.   Each set of rollers was about 10½ feet long.   One set was known as the "dryer rolls" and the other as the "calendar rolls."   The wet paper

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pulp was fed into the dryer rolls, the function of which was to dry the pulp as it passed from one roller to the other. After emerging from the dryer rolls at the end opposite to that in which the pulp was fed, the paper, thoroughly dried, passed over to the set of calendar rolls, down and over which various rolls it passed, and extended to a reel beyond. The top of the calendar rolls is 11½ feet from the floor. There are in the set 8 or 9 separate rollers, varying in weight from 1,800 pounds to over 2 tons. The office of the calendar rolls is to smooth, and hardens the paper as it passes between them. As the paper passes from the dryer to the calendar rolls, it sometimes breaks, and falls down between the two sets of rollers. Waste pieces of paper from other sources also from time to time accumulate. This broken or waste paper which accumulated between the sets of rollers was called "broke." Plaintiff, who was 27 years old, was employed as a "broke hustler"; his duty being to go into this space 10½ feet long and 4½ feet wide between the dryer and calendar rolls, gather up the broke, and remove it. He was obliged to emerge from this space between the rollers at the same end at which he entered. On the occasion of the accident, the paper had broken and had accumulated on the floor in the space between the dryer and calendar rolls. Plaintiff describes the accident as follows:

"I went in there to take it out and got caught. That is all there was to it—caught in the calendars. The other men were down at the wet end. I don't know what doing. Q. How much paper did you grab up when you started to go out? A. A good big armful. I went in and got my arms around it, and started to back out with it, and it caught in the calendar and yanked me in. This was loose paper that had fallen in there."

Plaintiff had been doing the same kind of work for 10 or 12 days. During that time the paper had frequently broken and been removed by him. He said:

"It had been breaking different times right along. It was in the nighttime, and it had been breaking that night. I don't know how many times I had trucked away paper that night. Several times, I presume."

The evidence tends to show that in the operation of this machinery electricity was generated of varying degrees of intensity according to the different witnesses. It also appears that there was an apparatus whereby cold air was blown from the basement against some portion of the calendar rolls for the purpose of cooling or hardening the paper. It was so arranged that the air current could be adjusted to any particular place of the calendar.

Under the charge of the court, the jury has found that the bundle of paper caught up by the plaintiff was drawn into the calendar rolls either by the attraction of the electricity generated as aforesaid or by the action of the said air current, or by both of said forces combined, and that plaintiff thereby without fault on his part was, in turn, brought into contact with the calendar rolls and injured, and that the precise ground of defendant's negligence was that it had not warned plaintiff of the existence of these electrical and air forces.

We think the case fails to show with sufficient clearness that the accident was due to either of those forces. Obviously the situation was one which required great care and attention to duty on the part

of plaintiff. Into this space 4½ feet wide he proceeded with rapidly moving machinery on either side of him extending from the floor to a height considerably exceeding his own height. He would have us understand that it was not practicable for him to turn around, but that he walked backward with the broke in his arms. The situation was no different and the danger was no greater than had existed at any time while he was there at work, and he had frequently performed the same process in which he was engaged when injured. Neither the electricity nor the air current was sufficiently pronounced to make him aware of its existence, although according to his contention he had been working in the presence of both more than 10 days. His testimony is entirely lacking in respect to details which are essential to establish the fact that the bundle of broke was drawn or driven into the rolls by the electricity or air currents assuming the latter to have existed. The evidence is entirely consistent with the theory that, by some unfortunate or inattentive act or omission of himself, the broke came in contact with the machinery. The evidence also leaves it open to the inference that the broke might have been drawn into the rolls by the suction usually created by rapidly moving machinery. The existence of this latter force is a matter of common knowledge, concerning which it was not incumbent on defendant to warn plaintiff.

Nor does it satisfactorily appear that the existence of an air current blown from the basement against the calendar rolls contributed to the accident. The evidence clearly shows that this draft of air was sometimes directed to one portion of the calendar rolls and sometimes to another. There is no evidence whatever that at the time of the accident it was blowing against that portion of the rolls with which plaintiff came in contact. Nevertheless the jury were permitted to find that this caused or contributed to the accident. Nothing is better settled than that a verdict cannot be based on surmise or conjecture. The burden of proof was on the plaintiff to establish affirmatively that the accident was caused solely in the manner claimed. This burden he has failed to sustain. This case is materially different from Wyman v. Orr, 47 App. Div. 136, 62 N. Y. Supp. 195, and Makin v. Pettebone Cataract Paper Company, 111 App. Div. 726, 97 N. Y. Supp. 894. In the first of those cases the record discloses that the plaintiff was minutely and exhaustively examined as to his conduct and actions at the time of the accident with a view to excluding any other hypothesis than that the accident was due solely to the electrical current. The question here involved did not exist in that case, and hence no reference thereto was made in the opinion. The same distinction exists in the Makin Case. In both cases the accident happened to boys 15 and 16 years old, respectively, who were injured in spaces narrower than the one in question.

The judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur except CHESTER and KELLOGG, JJ., who dissent.