ERNEST M. FRENCH, Claimant, *v.* STATE OF NEW YORK, Defendant.

Claim No. 17342.

Court of Claims, March, 1923.

*Claims against the state — injury on state highway maintained under patrol system — no recovery unless failure of state to use ordinary care is shown — inequalities and slight depressions in surface no ground for award.*

CLAIM for injuries on state highway.

*Costello, Burden, Cooney & Walters (George R. Fearon,* of counsel), for claimant.

*Henry P. Nevins* and *John R. Clogston,* deputies attorney-general, for the State of New York.

MORSCHAUSER, J. The claimant presented a claim against the state of New York, alleging that while operating an automobile he was upset and injured by reason of certain defects in the highway which was maintained by the state under the patrol system. He alleges that the defects consisted of certain holes in the highway. The claimant on the 4th of December, 1921, was driving a Ford automobile going in an easterly direction towards Syracuse in the town of Camillus. When he arrived at a point where the concrete road ends and the macadam road begins he felt several jolts, and after proceeding a short distance he lost control of his car and the same crossed the road from the south to the north side and then turned in an opposite direction from which it had been going and upset, injuring him and the other passengers in the car. He claims that there were a number of depressions or holes on the southerly side of the road a short distance, something like twenty-five feet, east of the place where the two roads join. Upon the trial he produced several witnesses to describe these depressions or holes. It appeared that where the macadam and concrete roads came together the macadam was crowned while the concrete was substantially

flat, and that there was a difference in the levels of these two roads at that point. The concrete road was eighteen feet in width and the macadam sixteen feet in width.

The first witness called as to the condition of the road was one Paul Staats who testified that the holes that he observed which it is claimed are the ones that caused the accident were located east a short distance from the place where the two roads join, and located on the southerly side in the macadam road at the shoulder of this road. He estimated its location at about ten feet easterly in the macadam road from the concrete road, and stated that one of the holes was something like five or six inches in depth. He did not state as to the depth of the others.

The next witness called by the claimant was William L. Wallace, a physician, who arrived at the scene of the accident shortly after it occurred and who gave a description of a depression or hole, but it appears from his evidence that the holes about which he testified were west of the junction of the concrete and macadam roads and that the holes he described and noticed were something like twenty or twenty-five feet in a westerly direction from the place where the two roads join, and I do not understand there is any claim that the depressions and holes described by this witness had to do with the accident. This witness also testified that there was a difference in the levels of the two roads at the junction of the roads which was caused by the macadam road being crowned while the concrete road was level, forming a shoulder and making a difference of five or six inches within a length of ten feet.

The next witness was Charles Van Vlechten who testified about the condition of the road and holes at the point or place where it is claimed that the accident occurred. This witness states there were several holes, one large one and several smaller ones; that some of them were at least fourteen inches across and over three inches and a half or four inches in depth, at right angles to the road, located in the shoulder of the road east of the location of the place where the two roads join.

The next witness called was one May Van Vlechten who lived in the neighborhood and who testified as to the holes which it is claimed caused the accident, and she also locates them east of the place where the two roads join, fixing the width of the holes about a foot across, three feet in length, and four or five inches in depth. She indicated with her hands the depth and indicated about seven inches as being the depth of this hole.

There were no other witnesses on the part of the claimant that gave any description of these depressions, and all that the claimant did call simply gave their estimate or guess as to the depth of the holes. It also appears in the evidence both on the part of the claim-

ant and on the part of the state, that immediately after the accident there was noticed a black mark across the road extending from the south to the north side which had the appearance of having been made by a rubber shoe of an automobile after the brake had been applied. By actual measurement this mark across the road was ninety-six feet east of the point where the two roads come together. There is nothing in the evidence to indicate that at this point where this mark began there were any depressions or holes, but the witnesses all place the holes which it is claimed caused the accident something like twenty or twenty-five feet east of the point where the two roads join. The state produced several witnesses testifying that there were no holes there at all. These witnesses simply made a casual examination with a lantern shortly after the accident, and I am satisfied that the claimant's witnesses were truthful and undoubtedly intended to correctly describe the holes and depressions, but at most it was a mere guess on their part as to the depth and extent of the holes. The fact that there was but one mark across the road made by the shoe of the automobile would indicate that one wheel, when the brake was applied, was sufficiently locked to prevent it from revolving, while the other was free to revolve. One wheel not revolving the car would naturally swerve toward the side upon which the wheel that was locked was located. And in my opinion that was undoubtedly the cause of the car going across the road and turning in an opposite direction.

Primarily the state would not be liable for any defects of its highways, and it is only because the state assumed liability of defects that it can be held liable for an accident occurring by reason of such defects. Section 176 of the Highway Law as in force at the time of this accident assumed on the part of the state liability for such defects where the highways were maintained under the patrol system.

By sections 12 and 26 of the Court of Claims Act jurisdiction is conferred upon the Court of Claims to hear, try and determine claims against the state, but in no case shall any liability be implied against the state and no award shall be made on any claim against the state except upon such legal evidence as would establish liability against an individual or corporation in a court of law or equity.

So that the state can only be liable for defects in the highways measured by the same rules of liability as exist between individuals or against municipalities, and the state in the care of its highways where operated by the patrol system can only be liable for a failure to use ordinary care and reasonable caution in the maintenance and repair of these highways. There is no evidence that there were any measurements made of the depth of the depression or hole which the claimant alleges caused the accident, and it seems that

the depth of the hole or depression was at best a guess, or estimate, of the witnesses on the part of the claimant, some saying the depression was only three inches deep while others say it was from six to seven inches in depth. If the testimony of the witness who gave it as his idea that it was only three inches in depth is correct, or if it was an inch or two more than that in depth, the state would not be liable. It cannot be said that a verdict for damages should be rendered against the state where the evidence at most is a mere guess or conjecture on the part of the witnesses. *Lalor* v. *City of New York,* 208 N. Y. 431; *Faber* v. *City of New York,* 161 App. Div. 203; *Terry* v. *Village of Perry,* 199 N. Y. 79.

Where a municipality was sued for negligence and it appeared that a hole or rut in the open highway *ten inches* deep was caused by the natural wear of wagon wheels in the spring of the year it was held that this was not such a defect as called for repairs. *Osterhout* v. *Town of Bethlehem,* 55 App. Div. 198.

Reasonable care in the construction and maintenance of highways is the measure of duty resting upon municipalities, and they are not liable for injuries resulting from accidents which are not, by the exercise of reasonable forethought and prudence, to be anticipated.

Defects of a trivial character, irregularities and slight depressions of highways are caused and created by constant use and it cannot be said that municipalities which are charged with the care of highways are liable for defects of this nature or liable for a failure to remedy them. The law never intended to cast a burden of this extent upon municipalities in the care of its highways. *Butler* v. *Village of Oxford,* 186 N. Y. 444; *Hamilton* v. *City of Buffalo,* 173 id. 72; *Terry* v. *Village of Perry,* 199 id. 79; *Gastel* v. *City of New York,* 194 id. 15; *Flansburg* v. *Town of Eldridge,* 205 id. 423; *Hubbell* v. *City of Yonkers,* 104 id. 434; *Clapper* v. *Town of Waterford,* 131 id. 382; *Lane* v. *Town of Hancock,* 142 id. 510.

The condition of this macadam road which it is claimed caused the accident was caused by the natural wear and use of the road and was the ragged edge of macadam roads that are quite common throughout the state where the macadam roads exist. It cannot be said that the claimant has established a cause of action by simply showing that several holes, so called, which were mere irregularities, extending from the shoulder of the road beyond to the extent of from three to six inches, is such a defect as to hold the state liable.

The claim is, therefore, dismissed.

ACKERSON, P. J., concurs.

Judgment accordingly.