FREDERICK H. SUTHERLAND, as Administrator of the Estate of MARK Q. SUTHERLAND, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27889.)

Court of Claims, February 7, 1947.

*J. Stanley Carter* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Ward N. Truesdell* of counsel), for defendant.

LAMBIASE, J.   This claim has been filed to recover pecuniary damages for the death of claimant's intestate, Mark Q. Sutherland, who died on the 15th day of March, 1943, as the result of injuries sustained by him in the early morning of that day in an automobile accident caused, it is alleged herein, through the negligence of the State of New York, its officers and employees, in the construction, maintenance and safeguarding of that part of New York State Highway Route No. 9 located about one quarter of a mile south of Staatsburg, in the town of Hyde Park, county of Dutchess, New York, and at or near a

point thereon where is located an inn known as the Cozy Inn.

New York State Route No. 9 afore-mentioned now is, and at all times herein mentioned was, under the direction, supervision, and control of the State of New York, its officers and employees. As such, it was regularly patrolled by employees of the State. It is a much traveled highway, and is a main artery of travel between the city of New York on the south and the city of Albany, New York, on the north. It connects, among other places, the city of Poughkeepsie, New York, and the village of Rhinebeck, New York; and at that part thereof above mentioned, and for the most part of its length from New York City to Rhinebeck, New York, it is at least a three-lane concrete highway, each lane being nine feet wide.

Cozy Inn above mentioned is located on the east side of said highway. The land upon which it is built abuts on said highway for a distance of about 150 feet. The driveway, which leads from the highway into the grounds surrounding the inn and into a parking area in the rear thereof, is of compacted earth. The elevation of the inn property is about three or four feet higher than that of the highway upon which it abuts. In fact, the elevation of the ground adjoining the easterly side of said highway in the area of the inn, and for some distance to the north thereof, is generally higher than that of the highway pavement.

About 100 feet north of the north line of the inn property and situate on the east side of said highway, there is another dirt driveway abutting twenty feet upon said highway at its juncture therewith, which driveway leads into other private property. For the purposes of convenience herein, we shall hereinafter refer to this driveway as the " north driveway " to distinguish it from the driveway leading into the inn property. Under each of these two driveways, at its juncture with the highway, there is a culvert consisting of a pipe covered with compacted earth. On the west side of said highway in the vicinity of said " north driveway ", set back about fifteen feet to the west of the westerly edge of the concrete pavement and paralleling generally said highway for some distance to the north, there is a stone wall about three feet in height. The elevation of the ground between the westerly edge of the pavement and the easterly face of the stone wall in the area opposite the " north driveway " ranges from a minimum of three or four inches to a maximum of three or four feet higher than that of the pavement of the highway. To the west of this wall the terrain slopes downward in a westerly direction.

Commencing at a point on said highway some distance south of the Cozy Inn, and continuing thereon northerly therefrom in front of and beyond said inn property to a point 140 feet north of the aforesaid " north driveway ", there is a descending grade of 3.3%. Continuing northerly from this last-mentioned point past the scene of the accident, and for the entire distance to the north shown on claimant's Exhibit 6 in evidence, the descending grade is 6.8%.

A six-degree curve, generally northeasterly in direction, commences at a point on said highway about 110 feet north of the north line of said " north driveway ". At a point at or near the beginning of this curve, the west side of the road is banked, the westerly edge of the concrete pavement of the highway being four tenths of a foot higher than the elevation of a point immediately opposite thereto on the easterly edge of the highway pavement. This banking continues in a northerly direction on the highway around the entire curve, and reaches its maximum at a point on said curve where the westerly edge of the pavement is 1.22 feet higher than the elevation of a point directly opposite it on the easterly edge of the pavement. The curve is located on the steepest part of the descending grade. From a point on the west side of said highway about 130 feet north of the beginning of said curve, and continuing past the scene of the accident, there extended, on the day of the accident, a guardrail consisting of a number of concrete posts imbedded in the side of the road. Some of these posts were connected by a cable strung between them, while others had no such connecting cable.

About 700 feet south of the beginning of said curve and 958 feet south of the point of the accident, there was at all times herein mentioned on the east side of said highway, a standard highway sign bearing upon it a reflectorized curved arrow, which arrow obviously indicated the curve ahead, and pointed in a general northeasterly direction. The post supporting this sign was studded with reflector buttons or so-called " cat's eyes ". On the approaches to said curve north of the " curve sign ", and down the hill, there were posts studded with these reflector buttons along both sides of the highway.

It has not been difficult to determine that the foregoing physical conditions prevailed near or at the scene of the accident upon the day of its occurrence. There are, however, other serious and perplexing questions of fact presented by the record relative to physical conditions, other than those already described herein, prevailing at the scene of the accident at the

time of its occurrence and concerning the circumstances under which said accident occurred. We shall now consider them.

There was evidence adduced by both the claimant and the defendant that there was, on the day of this fatal accident, an area of ice covering part of the pavement of said highway to the south, and another, involving part of the pavement, to the north of the scene of the accident. There is conflict, however, as to their extent and as to their exact location with reference to the point of the accident. On this issue claimant's evidence indicates: (1) that there was an area of said highway pavement, about 200 feet in length, just south of and leading up to the point of the accident which was coated with ice, the ice covering the middle and easterly lanes of the highway pavement; (2) that there was a considerable amount of ice on the highway just north of the scene of the accident, and (3) that except for these areas of ice at or near the point of this accident, there was no ice on this highway on the day of the accident as far to the south of the scene of the accident as the city of New York. The State's testimony, on the other hand, restricts the ice-covered area of the pavement to a part thereof a few feet in length and a few feet in width, and places said area to the south of the point of the accident, but at a considerable distance therefrom. In our opinion the claimant's contention finds ample support in the evidence.

The record sustains claimant's point: that on the day of the accident there was no open roadside ditch on the west side of said highway in the area opposite said "north driveway" and for some distance to the north thereof; that this so-called "no-ditch" area commenced at a point on the west side of said highway 35 feet south of the point of juncture of the center line of the "north driveway", extended westerly across the highway, with the west side of the pavement of the highway, and continued northerly therefrom along the west side of said highway for a distance of 160 feet; that for this distance of 160 feet there had never been constructed, and there were not at all times herein mentioned any open roadside ditch drainage facilities as provided for by the State's original highway reconstruction plans; and that, as a matter of fact, there was in this area at all times herein mentioned, and there had been since the reconstruction of the highway by the State, a shallow trench along the side of the road, which trench was formed by a slight natural depression in the ground.

The drainage of surface waters on the west side of the highway along this so-called "no-ditch" area was, because of the

topography of the terrain, from west to east. These surface waters, because of the conditions herein described, eventually reached and flowed onto and down the pavement of the highway in a northerly direction and accumulated on the middle and easterly lanes thereof. In like manner on the east side of the highway, because of the slope of the adjoining terrain to the east of the highway, the drainage of surface waters was from east to west down the driveway leading into the inn property, and down the " north driveway ", and onto the highway proper where, together with the surface waters coming from the west side of the highway, they accumulated, eventually freezing when the temperature dropped below freezing point and thereupon becoming ice. This situation with reference to the drainage of surface water at this point had persisted for several years previous to the accident; and there is evidence in the record of other accidents occurring at this point in the same manner and under physical conditions similar to the instant accident.

There is ample evidence, also, in the case upon which to make a finding that the ice, after it had accumulated on the highway pavement on the day of the accident, was not, before the accident herein, removed or rendered safe for users of the highway by proper sanding or other precaution.

This was the general situation prevailing on March 15, 1943, at or about 3:45 o'clock in the morning of that day when an automobile, in which claimant's intestate was riding, was being operated in a general northerly direction on the east side of said highway at or near said Cozy Inn. Accompanying claimant's intestate were two young women, one of whom was the owner of the automobile. When this automobile, in due time, arrived at the southerly patch or area of ice hereinbefore described, it skidded thereon, went out of control, slid or travelled across said highway from the east side to the west side thereof, knocked down in its course three or four posts of the guardrail erected on the west side of the highway, which posts had no cable strung between them, and came to a stop in a ditch off the road and close to a tree where it was later found by passing motorists. The mute evidence of marks on the tree and on the automobile leads to the conclusion that the automobile struck the tree before coming to a stop.

When the automobile was found, only claimant's intestate and the young woman who owned the car were found inside it. The second young woman lay on the ground on the right side of the automobile. The young woman in the car was found seated back of the steering wheel with her hands pinned on to

it, and plaintiff's intestate was found seated to her right and to the right of the manually operated gear shift lever with which the car was equipped. It is conceded that claimant's intestate died, after being removed to a hospital, without regaining consciousness as the result of the injuries sustained by him in this accident.

Serious damage was done to the automobile. Its top was so stove in that it wedged the two remaining occupants thereof inside it. Its left side was damaged and caked with dirt; and the glass of the windshield was broken. The left door and the left running board of the car were jammed to such an extent that it necessitated the use of tools to open the door. Its fenders on the left side were bent and damaged. There were dents in the body of the car on the left side, and there was an accumulation of dirt along the length of the left side running board right up to its juncture with the left rear fender. There was dirt on the left side of the front bumper and on the hinges of the left door.

No eyewitness to this accident was produced and testified upon the trial except one of the survivors thereof. She was not the owner of the vehicle and was a passenger in the automobile at the time of the accident. She testified, among other things: that as the automobile approached the Cozy Inn and continued beyond it, its speed was about twenty-five to thirty miles an hour; that it was being driven by claimant's intestate; that when the automobile struck the southerly area or patch of ice, it skidded; that she felt a slight application of the brakes; that the car continued skidding across the road; and that she had no recollection as to what happened after that. Her testimony was weakened generally because of the contradiction by other unquestioned evidence in the case of that part of her testimony wherein she testified that claimant's intestate was driving.

The State contends that the accident was caused because the automobile was being operated at such a terrific speed that the driver was unable to negotiate the curve in the road, thereby causing it to go off the road with the resulting consequences; and that the accident was caused without any fault or negligence on the part of the State.

The crux of this case, we feel, is found in the answer to the following questions: (a) Was the State negligent with reference to the roadside drainage facilities in its construction of the highway at the point of the accident and in continuing there-

after in thus maintaining it in that condition? (b) Were. the conditions at or near the place of the accident, under the circumstances herein, such as to create a dangerous condition for users of the highway and for vehicular traffic thereon? (c) Had the State given sufficient and adequate warning by the erection of proper and adequate signs at a reasonable distance from such point of danger if indeed a point of danger it was? (d) Were these acts of the State, or the State's omission to act, the proximate cause of the accident?

We are of the opinion that the conditions at the scene of the accident herein were on March 15, 1943, and had been for some time previous thereto, dangerous to users of the highway and to vehicular traffic, and that the State had ample notice of their existence in other years. These dangerous conditions, we believe, were due: (1) To the faulty construction of the highway by the State, its officers and employees, in failing to construct, provide, and maintain proper and adequate drainage facilities in connection therewith at this sharp curve and steep grade and in their immediate vicinity; (2) to the maintenance thereof by the State in such condition; and (3) to the failure of the State to remove the accumulated ice or to render it safe for users of the highway by proper sanding or other precaution. In connection with all the foregoing, consideration must be given to the question of whether the State, under the circumstances herein, had given sufficient and adequate warning of these dangerous conditions, which question we now discuss.

This was a State highway designed and reconstructed by the State. While it may not, in the instant case, be necessary to show that the State had notice of the improper and negligent construction and maintenance thereof, because of that fact (*Timerson* v. *State of New York*, 145 Misc. 613, 618), it is our opinion that from the evidence adduced, the State had actual knowledge, and certainly constructive knowledge, of this dangerous condition. (*LeBoeuf* v. *State of New York*, 169 Misc. 372, affd. 256 App. Div. 798, affd. 281 N. Y. 737; *Walker* v. *Town of Pittsfield*, 198 N. Y. 559; *Blood* v. *Hubbardston*, 121 Mass. 233; *Saulsbury* v. *Braun*, 223 App. Div. 555, affd. 249 N. Y. 618.)

It is true that the State is not an insurer of the safety of travelers using its highways, yet it is liable for failure to use ordinary care and reasonable caution in their maintenance and repair. (*Lane* v. *Town of Hancock*, 142 N. Y. 510, 521; *French* v. *State of New York*, 120 Misc. 867; *Monahan* v. *State of New York*, 41 N. Y. S. 2d 642; *Reuther* v. *State of New York*, 126

Misc. 773, affd. 217 App. Div. 801; *Doulin* v. *State of New York,* 251 App. Div. 767, affd. 277 N. Y. 558.)

Ordinarily the State would not be liable for conditions due solely to weather, yet when the highway is rendered more dangerous by the action of the elements, and the State fails to properly remedy such dangerous conditions, it may become liable to one injured thereby, especially so if it had knowledge, actual or constructive, of such existing conditions. (*LeBoeuf* v. *State of New York, supra.*) When the State's liability and negligence of its agents are proved by rules of law applicable to individuals, it may now respond in damages. (Court of Claims Act, § 8, formerly § 12-a; L. 1939, ch. 860; *Jackson* v. *State of New York,* 261 N. Y. 134, 138.) The failure of the State's properly delegated employees to exercise reasonable care to protect the users of State highways at points where danger is reasonably to be foreseen sustains a charge of negligence against it, and the State's liability follows if the injury complained of is the proximate consequence of such neglect of duty. (*Van de Walker* v. *State of New York,* 278 N. Y. 454.) We are satisfied that negligence on the part of the State, its officers and employees has been established herein in connection with the foregoing.

Under the circumstances, and in view of the dangerous condition existing, it was the duty of the State to properly and adequately warn traffic of such dangerous condition. (*Karl* v. *State of New York,* 279 N. Y. 555.) The court in *Cotriss* v. *State of New York* (223 App. Div. 520, 523) said as follows: " For the protection of the persons and property of users of the highways, the duty rests upon the State to erect and maintain suitable signs or barriers along or near State highways — and upon bridges over canals — of such a character and at such points as the various circumstances presented reasonably demand. (*Flansburg* v. *Town of Elbridge,* 205 N. Y. 423; Canal Law, § 47 * * *; *People* v. *Syracuse Rapid Transit R. Co.,* 129 App. Div. 800.) For a violation of such duty the State is responsible as is an individual or corporation. (*Mendelson* v. *State,* 218 App. Div. 210; affd. 245 N. Y. 634.) " See, also, *Ross* v. *State of New York,* 265 N. Y. 632; *Johnson* v. *State of New York,* 186 App. Div. 389, affd. 227 N. Y. 610; *Sporborg* v. *State of New York,* 226 App. Div. 113; *Miller* v. *State of New York,* 231 App. Div. 363.)

Whether such a sign or barrier shall be maintained at a given point, and under given circumstances, whether it be suitable merely as a warning or must suffice to physically pre-

vent vehicles from running off the highway into places of danger, is often a question difficult of determination. Usually a question of fact is presented (36 A. L. R. 413), but not always (*Roberts* v. *Town of Eaton*, 238 N. Y. 420, Note, 36 A. L. R. 413). (*Cotriss* v. *State of New York, supra.*)

There is no longer any question concerning the duty of the State to erect warning signs; and if their absence is the proximate cause of injury to persons or property, the State is liable for the resulting damage. We are of the opinion that the reflectorized " curve sign " and the reflectorized posts on the approaches to the curve and down the hill, herein described, did not constitute, in this instance, adequate or proper warning of this dangerous condition. (*Goldfarb* v. *State of New York*, 178 Misc. 180, affd. 264 App. Div. 976.) We believe, in view of all the conditions presented, that the State was negligent in failing to erect adequate and proper warning signs at, near, and in the vicinity of the scene of the accident to give the traveler fair and reasonable notice of the dangerous situation ahead.

The fact that the accident happened at a time outside the period in which the State is liable for damages suffered by any person because of any defects in the highway is not necessarily fatal, if the proof shows that the defect, whether it occurred within or without the time limit, is occasioned by or results from, negligence of the State. Section 58 (formerly § 176) of the Highway Law, and section 8 (formerly § 12-a) of the Court of Claims Act, must be read together. (*Miller* v. *State of New York, supra; Pierce* v. *State of New York* [and two other cases], 41 N. Y. S. 2d 602.) Under the general waiver provided by section 8 of the Court of Claims Act (L. 1939, ch. 860), the State has assumed responsibility for damages caused by the misfeasance or negligence of its officers or employees, " * * * whether such damages were sustained on a highway or otherwise or at any time of the year." (*Miller* v. *State of New York, supra*, p. 368.) This misfeasance or negligence may be a failure to warn of obstructions, as in the *Miller* case, or it may be a failure to repair after notice as in the *Karl* case (*supra*).

It appears from all the circumstances that the proximate cause of the accident was the skidding on the patch of ice of the automobile in which claimant's intestate was riding. This fact is established from all the evidence in the case, including reasonable inferences based upon, and logical conclusions drawn from, circumstantial evidence. It further appears that

the skidding of the automobile was caused by reason of the negligence and carelessness of the State and its officials in any or all of the particulars hereinbefore discussed. (*LeBoeuf* v. *State of New York*, 169 Misc. 372, *supra*.)

The burden of establishing the contributory negligence, if any, of claimant's intestate, in this case, rests upon the State. (Decedent Estate Law, § 131; *Frate* v. *State of New York*, 245 App. Div. 442, 446.) We have reserved for discussion at this point the question of who was driving the automobile at the time of this accident. There is a perplexing contradiction in the record on this point. We are concluded thereon, however, by the mute but convincing evidence that the young woman who owned the automobile was found, immediately after the accident, seated back of the steering wheel with her hands pinned on to it, and that the claimant's intestate was found seated to her right and to the right of the manually operated gear shift lever. We are satisfied that claimant's intestate was a passenger, and not the operator of the automobile. We can find no evidence of any kind showing contributory negligence on the part of claimant's intestate, and we hold him free from contributory negligence at the time of the accident. There remains for us to determine the amount of damages to award.

The rule of damages in cases such as this is always a difficult and perplexing one to apply. It is required that the damages awarded shall be an amount which shall be fair compensation for the " pecuniary injuries " resulting from the death of claimant's intestate to the person or persons for whose benefit the action is brought, in this case, his father and mother. (Decedent Estate Law, § 132; *Wolf* v. *State of New York*, 122 Misc. 381, affd. 210 App. Div. 827.) The " pecuniary injuries ", for which recovery only can be had, are always difficult of precise proof, uncertain and problematical. (*Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504.) " The main elements to be considered are the age of the decedent, his health, habits, qualities, expectation of life and expectation in life, earning ability, income, the prospect of increase of income, the number, age, sex, situation and condition of those dependent on him for support, and his disposition to support them well or otherwise, and the like. Nothing can be allowed for sentiment, for grief or for suffering, even when death was not immediate, but the precise question is what were the probable chances of pecuniary benefit from the continuance in life of the decedent worth under all

circumstances? (*Thomas* v. *Utica & Black River R. R. Co.*, 6 Civ. Prac. Rep. 353; 34 Hun. 626; 98 N. Y. 649.) " (*Arnold* v. *State of New York*, 163 App. Div. 253, 264. See, also, *Dimitroff* v. *State of New York*, 171 Misc. 635.) (For action in favor of the estate to recover damages accruing before death, see sections 119–120 of the Decedent Estate Law.)

The assessment of the damages suffered by a parent or parents from the death of his or their infant child is not to be restricted to the loss of its prospective services, during minority, but may also extend to the loss of probable benefits which might result to the parents, from the continuance of the child's life after reaching majority. The court in the *Birkett* case (110 N. Y. 504, *supra*) which was an action to recover for the " pecuniary injuries " resulting from the death of a young child caused by the wrongful acts or negligence of the defendant, said at page 508: " The jury were not bound, in estimating the compensation to be made for the death of the child, to confine their considerations to her minority. It is true that the plaintiff, as father, could command her services only during her minority. But in certain contingencies she might, after her majority, owe him the duty of support, which could, by legal proceedings, be enforced; and after that event she might, in many ways, be of great pecuniary benefit to him. In estimating the pecuniary value of this child to her next of kin, the jury could take into consideration all the probable, or even possible, benefits which might result to them from her life, modified, as in their estimation they should be, by all the chances of failure and misfortune. There is no rule but their own good sense for their guidance, and they were not in this case bound to assume that no pecuniary benefits would come to the next of kin from this child after her majority."

Decedent at the time of his death was twenty years of age; his health was good; and he was on the day of his death and had been since August, 1942, a member of the Marine Corps of the United States of America. He had had three years of high school education. Previous to his entering the armed services and in 1940, he had commenced to work. At that time he was employed driving a light delivery truck and was earning $25 a week, out of which he contributed $10 a week to his family. His habits were good. He was unmarried.

Pursuant to statute (Decedent Estate Law, § 133), under the circumstances of this case, any damages recovered herein are exclusively for the benefit of the father and mother of

claimant's intestate. The father of claimant's intestate at the time of the trial was fifty-one years of age, and was regularly employed earning $50.40 a week. His mother was forty-eight, and a housewife. Based upon the American Experience Table of Mortality, claimant's intestate at the time of his death had a life expectancy of 42.20 years. At their respective ages of fifty-one and forty-eight years, the father and mother of claimant's intestate had respectively life expectancies of 20.20 years and 22.36 years.

While at best the measure of damages must be somewhat indefinite, it must be confined and limited to the reasonable expectation of the pecuniary loss. Having in mind all of the considerations hereinbefore expressed, we have in an accompanying decision, made an award which we deem fair and just compensation for the " pecuniary injuries " resulting from the death of claimant's intestate to the person or persons for whose benefit this action has been brought, in this case, his mother and father; and in addition thereto, we have allowed and have made an award for the reasonable expenses of medical aid, nursing care and attention incident to the injuries causing death, and the reasonable funeral expenses of the decedent. (Decedent Estate Law, § 132.)

In connection with the award herein, because of the circumstances of this case, we deem it necessary to discuss certain enactments which make provision for the allowing of interest thereon.

Section 132 of the Decedent Estate Law of this State now provides and at all times herein mentioned provided in pertinent part that: " When final judgment for the plaintiff is rendered, the clerk must add to the sum so awarded, interest thereupon from the decèdent's death, and include it in the judgment. The inquisition, verdict, report or decision, may specify the day from which interest is to be computed; if it omits so to do, the day may be determined by the clerk, upon affidavits."

Subdivision 1 of section 19 of the Court of Claims Act now provides and at all times herein mentioned provided that: " If a claim which bears interest, is not filed until more than six months after the accrual of said claim, no interest shall be allowed between the expiration of six months from the time of such accrual and the time of the filing of such claim."

Also relevant to our discussion is section 16 of article I (formerly art. I, § 18) of the Constitution of the State of New York which now provides and at all times herein mentioned

provided as follows: "The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation."

The first two statutes above quoted might seem to be in conflict, since if we proceed under section 132 aforesaid, the clerk of the court must, in all cases, compute interest on the amount awarded, and include it in the judgment, the court specifying the date from which the the interest is to be computed; while under subdivision 1 of section 19 aforesaid, provision is therein made for suspension of interest upon the amount of the award under the circumstances and conditions therein set forth. If indeed the above-quoted statutes be contradictory, it will be the duty of this court under well-established principles, to construe them, if possible, so that both may stand, and force and effect be given to each. In our judgment such construction can and should be given.

The following facts are pertinent to our inquiry and discussion. Claimant's intestate died on March 15, 1943. On April 22, 1943, claimant was duly appointed administrator of the estate of the deceased herein, and appropriate letters of administration were duly issued to him on that day by the Probate Court of the County of Suffolk, Massachusetts. He duly qualified as such administrator, and since that date has been acting as such. Subsequent thereto, and on the 7th day of January, 1944, claimant caused himself to be appointed administrator with limited letters of the estate of the deceased herein by the Surrogate's Court of Dutchess County, New York. On February 7, 1944, claimant filed a notice of intention to file a claim herein. Thereafter an application was made to this court for permission to file a notice of intention to file a claim, and as a result of which, Judge Dye, formerly of this court, made an order on December 30, 1944, permitting the same, which order has been heretofore duly filed herein. On January 18, 1945, pursuant to the provisions of said order aforesaid, a notice of intention to file a claim and the claim itself were filed herein, which claim is the basis of the award herein.

The Legislature has entire control over the subject of interest, restricted only by constitutional limitations, and may enact such laws as it deems wise, regulating the rate to be allowed, in any given case. Such legislation is deemed a valid exercise of the police power of the State. Thus the court said in *Cornwall* v. *Mills* (12 Jones & Sp. 45, 52–53) which was an action

brought under chapter 450 of the Laws of 1847, as amended by chapter 78 of the Laws of 1870, for death by wrongful act, which statute provided for such actions and contained the express direction that " * * * damages recovered in any such action shall draw interest from the time of the death of such deceased person, and that such interest should be added to the verdict and inserted in the entry of judgment ": " This provision is impugned as *ultra vires* on the part of the legislature, and contrary to organic law. We are not referred to any particular clause of the constitution which is supposed to be invaded by the enactment, and we perceive no reason why it should not be competent for the legislature to direct the allowance of interest on the damages awarded, as well from the date of death of the deceased, as from that of the rendition of the verdict. The law has long allowed interest on verdicts to be computed by the clerk, added to the costs of the party entitled thereto, and inserted in the entry of judgment (*Code of Pro.* § 310). So far as we are aware, no objection on constitutional grounds has ever been urged against this provision of law, nor would any such objection, in our opinion, be tenable. The direction contained in the statute now under consideration is analogous, and is not obnoxious to criticism as in conflict with the constitution." (See, also, *O'Brien* v. *Young,* 95 N. Y. 428, 433; *Morley* v. *Lake Shore Railway Co.,* 146 U. S. 162; *Salter* v. *Utica & Black River Railroad Co.,* 86 N. Y. 401.)

There is no doubt that the interest provision of section 132 of the Decedent Estate Law governs herein unless the facts herein bring the instant case within the exception set out in subdivision 1 of section 19 of the Court of Claims Act, and provided we determine the enactment of said Court of Claims Act provision to be a valid exercise of legislative power.

Subdivision 1 of section 19 of the Court of Claims Act predicates its application upon two conditions: (1) The claim must be one that bears interest, and (2) the date of the filing of the claim must be more than six months after the accrual of the claim. As to item one, we believe there can be no question since section 132 aforesaid specifically provides that interest shall be added to the award. Let us see what the situation is as to item two.

Section 130 of the Decedent Estate Law now provides, and at all times herein mentioned provided, among other things, that the executor or administrator duly appointed in this State or in any other State, territory, or district of the United States,

or in any foreign country, of a decedent who has left him or her surviving a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect, or default by which the decedent's death was caused against a natural person, who, or a corporation which, would have been liable to an action in favor of the decedent by reason thereof, if death had not ensued.  Pursuant to this section our courts have held that limited ancillary letters of administration would not be granted to a foreign domiciliary administrator desiring to bring action in this State since he had power to bring action in his original capacity as domiciliary administrator.  (*Matter of Peltier,* 157 Misc. 97; *Matter of Von Kauffmann,* 167 Misc. 83; *Provost* v. *International Giant Safety Coaster Co.,* 208 N. Y. 635.)  When a statute creates liability and prescribes the person who shall have the right to enforce it, the latter is as component a part of the statutory right of action as is the former.  The right of the specified person to maintain the action and his existence is as integral in the right of action as the liability of the defendant.  (*Crapo* v. *City of Syracuse,* 183 N. Y. 395, motion for reargument denied 184 N. Y. 561; *Matter of Meng,* 227 N. Y. 264, motion for reargument denied 227 N. Y. 669.)

The right of action for death by wrongful act is vested exclusively in the personal representative of the deceased who may bring the action for the benefit of those named in the statute. It is a general principle of construction that where a right is given by statute and a remedy is provided in the same act, the right can be prosecuted in no other mode.  Since the action herein could only be brought by a duly appointed personal representative of the decedent, we conclude that the cause of action herein for the purposes of subdivision 1 of section 19 of the Court of Claims Act duly accrued when a personal representative of the decedent who had a lawful right to prosecute it was duly appointed.  This is so notwithstanding the fact that the damages which the right of action produces are the property of the statutory distributees, and the right to them is a property right.  (*Matter of Meekin* v. *Brooklyn Heights R. R. Co.,* 164 N. Y. 145; *Crapo* v. *City of Syracuse, supra; Matter of Meng, supra.*)  In this case, therefore, the claim accrued on April 24, 1943, the date of the appointment of the administrator in the State of Massachusetts.  No claim having been filed until January 18, 1945, it is apparent that more than six months had expired since the accrual thereof by that date.

We are satisfied, therefore, that the instant case comes within the provisions of subdivision 1 of section 19 of the Court of

Claims Act, and that said statute is applicable to the instant case, unless the Legislature of the State of New York, in the enactment thereof, invaded some particular constitutional provision or limitation. A determination of this point involves the consideration of section 16 of article I of the New York State Constitution of 1938 which section we have hereinbefore set out at length.

The State of New York, being sovereign, is immune from both action and liability except by its consent. Thus no claim may be litigated at all against it except by its permission. A valid cause of action may exist, but the State's immunity prevents its enforcement. (*Buckles* v. *State of New York*, 221 N. Y. 418.) Its consent must waive not only its immunity from being sued at all, but also its immunity from liability. This it has done by legislative enactment, and in connection therewith it has imposed certain terms and conditions and has prescribed the procedure to be followed in the enforcement of claims which may be brought against it. (Court of Claims Act, § 8 *et seq.*, L. 1939, ch. 860, eff. July 1, 1939.)

The State, being sovereign, had the right in authorizing the maintenance of proceedings for the recovery of claims against it to impose such terms and conditions and to prescribe such procedure as its legislative body deemed proper. (*Gates* v. *State of New York*, 128 N. Y. 221, 228.) Legislative enactments, within constitutional limitations, are the exclusive source and boundary of the liability and of the remedy. They may create the cause of action, define the period of its existence, and the party by whom and the method in which it shall be enforced, and prescribe the measure of damages and beneficiaries.

These terms, conditions, and procedural requirements thus set up in the Court of Claims Act do not, in our opinion, either abrogate the cause of action by said constitutional provision secured or place any statutory limitation upon the amount recoverable in such action both of which things are specifically prohibited by said constitutional provision. A right of action existing at any time is not abrogated so long as the facts which give rise to it and which must be proven to maintain it are unchanged. (*Matter of Mcng*, 227 N. Y. 264, motion for reargument denied 227 N. Y. 669, *supra*.) This constitutional provision has been in the New York State Constitution since the adoption of the New York State Constitution of 1894, at which time there was a statutory limitation of $5,000 upon the amount of recovery in actions of this kind. It was to prevent the re-enactment of a statute containing such or similar limitations on the amount

recoverable that this section was then embodied in our State Constitution as section 18 of article I and has been since retained therein to this day, renumbered, however, section 16 of article I. (*Medinger* v. *Brooklyn Heights R. R. Co.,* 6 App. Div. 42.) The opinion in the *Medinger case* (*supra*) makes many references to the proceedings of the Constitutional Convention which led to the adoption of the Constitution of 1894 and contains excerpts therefrom relative to this section which leave no doubt as to what was intended to be accomplished by it.

Furthermore, we must bear in mind that subdivision 1 of section 19 of the Court of Claims Act suspends the interest as therein set forth and for the period therein provided only " If a claim which bears interest, is not filed until more than six months after the accrual of said claim * * * ." The statute imposes such a consequence for the delay on the part of a claimant in filing and for no other reason. It makes the condition therein set forth, to wit, the filing of a claim within six months after its accrual, a prerequisite to an interest-bearing claim, such as in the instant case, drawing interest uninterruptedly from the date of death to the date of verdict, judgment or award. Any interest-bearing claim, if filed within six months of its accrual, is outside of and is unaffected by the provisions of this section and subdivision thereof. It is only the claimant's inaction which brings this section into play; and as was said by the court in *O'Brien* v. *Lodi* (246. N. Y. 46, 49) : " [Claimant] may by inaction forego his rights * * * under the law, or his cause of action * * * . In all instances he is the mover who sets the claim or the action in motion * * * ."

We are satisfied, therefore, that subdivision 1 of section 19 of the Court of Claims Act does not contravene the Constitution of the State of New York (adopted 1938) and particularly section 16 of article I thereof; and we conclude that section 132 of the Decedent Estate Law and subdivision 1 of section 19 of the Court of Claims Act must be read together. They can exist side by side and are reconcilable, each being given and having a reasonable field of operation.

We hold, therefore, that the award herein is to bear interest as follows: (1) From March 15, 1943 (the date of the death of decedent herein), through October 22, 1943, said latter date being six months from April 22, 1943, the date of the accrual of the cause of action, as determined herein; and (2) from January 18, 1945, the date when the claim herein was duly filed, to the date of entry of judgment. We hold further that interest

shall not be allowed upon said award from the 23d day of October, 1943, to January 18, 1945.

Claimant's evidence as to previous accidents received subject to the right of the State to move to strike out if not connected up as to similarity to the instant accident is hereby found not to have been thus connected up; and the motion of the State to strike out said evidence, decision upon which said motion was reserved until this time by the court, is hereby granted with an exception to the claimant. Consequently we have not considered said evidence herein ordered stricken out in arriving at our decision herein. This evidence thus stricken out, however, must not be confused with evidence offered by the claimant and received by the court of two previous accidents at the point of the instant accident, the admissibility of which was finally determined by the court at S. M. 483–484. Motions made at the end of claimant's case and also at the end of the entire case by the State to dismiss upon which the decision was reserved until this time by the court are respectively in all respects denied with an exception reserved to the State in each instance.