FRANCES CARVER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 26215.)

Court of Claims, February 22, 1947.

*Richard P. Byrne* and *D. Charles O'Brien,* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Frank M. Noonan* of counsel), for defendant.

LOUNSBERRY, J. This is a negligence claim against the State of New York resulting from an automobile accident on December 24, 1940, on the State highway which leads eastward from Syracuse to Jamesville. On that date, the claimant, who filed her claim under the name Frances Carver, but whose name is now Frances Muench, left her place of employment in Syracuse at about three o'clock in the afternoon to drive to her home at Pompey, about fourteen miles distant. She intended to pick up her mother and return to Syracuse at once, since she was supposed to report to her place of employment, and also hoped to do some Christmas shopping. The day was clear, the temperature around fifty-one degrees, and the pavement generally dry. The highway, which had been originally built by the County of Onondaga and was later taken over and maintained by the State of New York, consisted of two lanes of concrete with a total width of eighteen feet and was in generally good condition.

At a point about one-half mile west of Jamesville the road curves first to the north and then to the south and signs warning of " S Curve " were posted. The second curve is in the area of a cut from the side of a hill such that a bank rises from the south ditch of the road to a height of about nineteen feet, with about a one and one-half foot slope. The soil in the bank is

clay, imbedded with rocks and stones of various sizes. There was some vegetation on the bank but parts of it were bare. Because of this bank little direct sunlight strikes the pavement.

The approach from west to east toward the second curve is somewhat upgrade but the curve itself is downgrade. As the claimant's car rounded this curve, it came upon what the claimant contends was a large patch of thick ice on the pavement, imbedded with rocks and dirt. The car skidded, went off the north side of the road and overturned. The claimant was injured and the car was practically wrecked.

It is claimant's contention that there was either no ditch along the south edge of the road between the pavement and the above-mentioned bank or that it was wholly inadequate and defectively maintained, so that water together with loose stones, dirt and gravel washed from the bank onto the pavement and there froze and accumulated; that this condition had existed each winter for a number of years; that the State knew of it, but had taken no steps to remedy the situation or even to give warning of it.

Claimant disclaimed familiarity with the road, stating that she ordinarily drove by another route, but admitted upon cross-examination that she had probably driven on it at least once a week. She appeared to have been familiar with the existence of the curves and claimed previously to have seen water and stones on the pavement at the point of the accident, but did not recall ever seeing any ice at that point prior to the accident.

The evidence is in almost hopeless conflict. The claimant asserts that she was driving only between twenty-five and thirty miles per hour, because of the curves, while the occupants of a State maintenance truck which met and passed the claimant's car an instant before the accident assert that she was driving between forty and forty-five miles per hour, and that her car was swaying or weaving before she reached the alleged icy spot.

The claimant testified that an icy area extended all across the pavement. One of her witnesses, who had driven on the road several times a day for several years before the accident and who arrived on the scene about an hour after the accident, testified that such ice was three and one-half to four inches thick, and that the condition had existed each winter for a number of years. He asserted that the shoulder on the south side of the pavement was higher than the pavement

itself; that there was no ditch; and that water, stones and gravel from the bank frequently washed onto the pavement. Another of the claimant's witnesses testified to the same general effect although with less assurance.

On the other hand, Reverend John M. Van Tilberg, the Presbyterian minister at Jamesville, testified that he had traveled on this road at least five times a week since 1935, and had never noticed any such ice, water or stone condition. He testified that on the day of the accident, there had been a slight snow squall in the morning; that he had driven over the road previously each way that day and had noticed no such ice condition; that at the time of the accident he was again on the road driving towards Syracuse; that he arrived on the scene of the accident almost immediately after its occurrence, and helped remove the claimant from the car; and that he then made an examination of the road conditions. He discovered a small patch of what he termed hoar frost on the road, having the appearance of a very light coat of snow which had partially melted and then had begun to freeze. He noted that the claimant's car had left distinct skid marks, and that the distance from the beginning of these marks to the point where the car left the road was between 100 and 125 feet. He found no ice, stones or gravel on the road.

The occupants of the above-mentioned State maintenance truck, which was proceeding in the same direction as the Van Tilberg car and just in front of it, observed the claimant's car approaching around the curve, as before stated, and heard the crash just after she passed the truck. They likewise assisted in removing her from the car, and they likewise made an investigation of the road conditions. They found no ice, stone or gravel, but did note a small patch, which they described as a wet spot such as sometimes occurs when water oozes up between the cracks in the pavement, and that this wet spot was beginning to freeze.

Witnesses for the State testified that the shoulder of the road at the point of the accident was about eight feet wide; that there was a wide shallow V-type ditch which had its lowest point some three and one-half inches below the level of the pavement; that this ditch was of approved type and fully adequate to carry off all drainage from the bank; that the pavement was so banked that the north edge thereof was some seven inches higher than the south edge, so that drainage of any water on the pavement would be towards the ditch, not away from it;

that the bank was stabilized; and that there was no evidence that any rocks or gravel washed down from it or that they could wash out onto the pavement in any event.

The State maintenance foreman, in charge of the road, had travelled it that day, and had observed no such condition alleged by the claimant, either then or at any other time. There was no record of any earth slides from the bank.

After weighing all of this testimony carefully and after visiting the scene of the accident and after examination of the various exhibits, this court is of the opinion that the claimant has failed to prove any negligence on the part of the State of New York or its officers or employees. The claimant's witnesses made no specific examination of the road condition, whereas the State witnesses did so, and we therefore believe that the testimony of the State witnesses is the more reliable. Their testimony shows conclusively that there was no such ice condition as alleged, and that at the most it was simply a small spot of moisture which might well have resulted either from a light snowfall or from seepage, and cannot be logically traced to any condition of the bank or of the ditch. The testimony also indicates that the ditch was of the usual type and was properly maintained.

The State is not an insurer of the complete safety of its highways under all conditions. If it exercises reasonable care in their construction and maintenance, it has done all that can properly be expected of it. (*Reuther* v. *State of New York*, 126 Misc. 773; *French* v. *State of New York*, 120 Misc. 867; *Worden* v. *State of New York*, 134 Misc. 848, 856; *Lane* v. *Town of Hancock*, 142 N. Y. 510.) It cannot be held responsible for the appearance of moist or slippery spots of which it has had no notice and which are caused by conditions over which it has no control. A responsibility still rests upon the operators of motor vehicles to take into consideration the fact that such conditions are likely to occur in winter time, and to operate their vehicles with due caution accordingly.

We are of the opinion that the claimant was not operating with such caution. She was obviously on a hurried trip and we concluded from the testimony that she was operating at an excessive rate of speed around the curves, and did not have her car properly under control.

The claim is, therefore, dismissed.