FRANCIS J. LYONS, as Administrator of the Estate of NEIL M. LYONS, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28243.)

Court of Claims, September 1, 1948.

*M. Francis Malone* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J.  The claim herein alleges that: " On or about May 24, 1946, decedent, while walking on Route 5 in the Town of New Hartford, New York, stepped, slipped or stumbled into

a culvert which passes under Route 5 and was killed." (Claim, Par. seventh.)

It is further alleged therein that: " The decedent with some companions, while legally using said highway, stepped, slipped or fell from the southerly side of said highway and dropped approximately seventeen feet into the culvert created and maintained by the State of New York and was killed. The State of New York was negligent and careless and maintained a nuisance at said spot, failing to have proper guardrails to protect the traveling public, including this decedent, at a spot which was inherently dangerous unless properly protected; and in allowing and permitting an old barbed wire fence to be lying on the ground in this vicinity; creating and maintaining a trap or nuisance and a place of danger for adults and children who might be legally and lawfully using the public highway and said State of New York was negligent and guilty of maintaining a nuisance and a dangerous trap at or near said public highway and in creating, allowing, permitting and maintaining a culvert with a seventeen foot drop under the road without any proper guards or warning signs to apprise the public and this decedent of the dangerous trap existing at this particular point. State of New York, its officers, agents and employees created and knew of the dangerous conditions above described and said dangerous conditions existed for such a long period of time that the State of New York knew or should have known of same. That the State of New York did nothing to correct said dangerous condition until after the death of this decedent at which time it erected post guardrails with cable thereon to protect the public from this dangerous trap ". (Claim, Par. eighth in part, as amended). It is alleged also that the " Death of said decedent occurred without any negligence on the part of said decedent and solely as a result of the negligence and wrongdoing of the State of New York, its officers, agents and employees ". (Claim, Par. ninth.) The State denies any liability.

It appears that on the day in question, at or about 10:30 P. M., decedent, in company with three other boys and two girls, was walking easterly in the general direction of the city of Utica, New York, along the shoulder immediately adjacent to the edge of the pavement on the south side of said Route 5, also known as Highway No. 250. This shoulder was well defined and well trodden and was about six to eight feet in width. As they were thus walking along there came a time when decedent and another boy, one Philip J. Durr, left the group and ran to the

right, or to the south and disappeared behind a line of trees paralleling the south edge of the pavement of said highway and located at a distance of about twenty-six and one-half feet southerly therefrom. While decedent was thus engaged, he plunged into a culvert there located, and fell a distance of about fourteen feet into the water below and was killed. The pavement at the point of the accident is of concrete about twenty-seven and three-tenths feet in width and consists of three lanes. It was constructed to that width by the State in 1927. Claimant's companion suffered no mishap and he described the unfortunate occurrence upon the trial in these words: " Q. As you were walking along there tell the Court what happened. A. Well, we were walking along and we started running on the girls and as we were running along Neil and myself both turned a little bit to the right and he went in one place and I was going into the next place, but the barbed wire blocked me so I went up ahead, and I see him drop, so I come back and I went in there and I started going in there and I started sliding and I caught on to the tree and I come back out. * * * " (SM 35–36). It is alleged by the claimant that the decedent stepped, slipped, or stumbled into the aforementioned culvert, claiming particularly that decedent stumbled over some strands of barbed wire which were strung along at the point where decedent disappeared, about twenty-six and six-tenths feet south of the south edge of the pavement and about a foot above and parallel to the ground.

There is no dispute that the concrete pavement and the shoulder south of the south edge thereof were perfectly safe and in good condition, and if the State is to be held liable it must be upon a theory that it was its duty not only to keep the pavement and the shoulders in good condition but also the whole space between what claimant insists were the boundary lines of the highway, a distance claimed by claimant to be ninety-nine feet. We are satisfied that the accident occurred in consequence of decedent's act in leaving the traveled road and shoulder and running into the line of trees, beyond which were the strands of barbed wire and the culvert opening. Under such circumstances, what duty did the State owe to the decedent herein, and if so, did it discharge it?

To find negligence we must first find a duty. What facts, if any, adduced by the claimant show the existence of a duty on the part of the State to maintain and to keep in repair the entire space or parcel of land between the south edge of the pavement and the barbed wire?

It has not been established by a fair preponderance of the evidence that the State of New York, at the time of the accident, was the owner of the land between the south edge of the pavement and the barbed wire fence; or, that it erected said fence. We are satisfied that the State was maintaining as a shoulder, at the time of the accident, a strip of said land about six to eight feet in width immediately adjacent to the southerly edge of the pavement. Inasmuch as it does not appear that the accident herein occurred within the limits of an incorporated village, we are not concerned with the provision of section 58 of the Highway Law limiting the width of pavement to be maintained by the State in such instance. (*Seelye* v. *State of New York,* 178 Misc. 278, affd. 267 App. Div. 941.) While the shoulder of a road cannot be deemed a sidewalk, still the claimant in the absence of other facilities for pedestrian travel, and there were none at or near the scene of the accident, had a perfect right to walk either on the concrete or on the shoulder and when so doing was entitled to find it in a reasonably safe condition. (*Wager* v. *State of New York,* 257 App. Div. 580; *Wilke* v. *State of New York,* 178 Misc. 765.) As to the right of vehicles to travel upon the shoulder of a road and as to the liability of the State in connection therewith, see *Taylor* v. *State* (262 App. Div. 657, affd. 288 N. Y. 542), *LaRue* v. *Tiernan* (260 App. Div. 337, affd. 285 N. Y. 550), *Lucas* v. *State of New York* (36 N. Y. S. 2d 862), and *Kerner* v. *State of New York* (45 N. Y. S. 2d 648).

In *Ireland* v. *Oswego, Hannibal & Sterling Plank Road Company* (13 N. Y. 526, 531) the court said: '' It is unquestionably true that neither the highway officers of the towns, or the directors of plank road companies, are required to grade the whole space within the limits of the highway, so that a traveler can safely drive his carriage over every part of it. In ordinary cases, if they provide a pathway for carriages of suitable width, and so define it as that there shall be no reasonable danger of its being mistaken, they will not be in fault if a traveler chooses to try an experiment upon the part which is not thus prepared for traveling.'' And, in *King* v. *Village of Fort Ann,* (180 N. Y. 496, 501) the court said: '' It is in general the duty of a traveler to remain in the traveled track of the road or that part of the highway which, to a reasonable width, has been graded or prepared for that purpose, and if he voluntarily deviates from the roadway thus prepared and meets with an accident from some cause outside of the traveled track the municipality ought not to be responsible for any damage or injury he may thus sustain. If the law were otherwise it would follow that a munici-

pality would be liable for all accidents occurring in consequence of the voluntary act or mistake of a traveler in leaving the roadway to travel upon that part not intended for his use.''

The same subject was before the court in *Flansburg* v. *Town of Elbridge* (205 N. Y. 423, 429–430) and in connection therewith, the court said: '' The commissioners of highways were not negligent in omitting to maintain a guardrail or fence upon the north boundary of the roadway. It is a matter of common intelligence, as well as of law, that a reasonably safe condition of a highway for the travel to which it is subject is all that is practicable and that adjoining roadways fitted and intended for use are spaces in the highways unsuitable and dangerous for travel. Highway authorities are not under the duty of obstructing travelers from straying into these spaces. They are bound to maintain guard rails or barriers only to protect those traveling within the space prepared and offered for that purpose against dangers in such close proximity thereto as to make traveling on it perilous or where there are other unusual or exceptional conditions. * * * The town is not responsible for the injuries sustained by the plaintiff consequent upon his straying from the adequate and suitable roadway prepared for travelers. To hold that the defendant may be made liable for accidents as independent of negligence on the part of the commissioners and as unlikely and unapprehended as was this would charge them with an enlarged, unjust and harsh responsibility and risk.'' (Citing cases.)

The evidence indicates that decedent was indulging in play, a thing not uncommon for a boy of his age, at the time that he met his death. That was the reason why he left the traveled portion of the highway and the shoulder which were perfectly safe. Doubtless it was a mistake on his part, but it was a mistake which the State's officers and employees were not bound to anticipate or guard against.. It seems to us that in the case at bar the State met and performed all the duties that it owed to the public, and particularly to the decedent herein, within the principle of the rule established by the foregoing authorities. It was a most unfortunate accident; but to hold that the State is to be held responsible in pecuniary damages by reason thereof would impose upon it a burden not warranted and incapable of being sustained in law. (*Marino* v. *State of New York,* 257 App. Div. 734; *Kaplan* v. *State of New York,* Claim No. 24618 [Ct. Cl.].)

Furthermore, it is well settled in law that the State, bound to keep its highways in repair, does not become an insurer of

travelers thereon. It is required to use reasonable skill and diligence in making its highways safe and convenient for travel. It is under no obligation to provide for everything that may happen upon its highways, but only for such use of them as is ordinary and as reasonably may be expected. (*Ring* v. *City of Cohoes,* 77 N. Y. 83, 86; *Ring* v. *City of Cohoes,* 85 N. Y. 627.) The liability of the State for injuries caused by defects in State highways is similar to the liability of towns. (*Best* v. *State of New York,* 203 App. Div. 339, affd. 236 N. Y. 662.) The limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all circumstances, even for those who use them properly. (*Lane* v. *Town of Hancock,* 142 N. Y. 510, 521; *Hubbell* v. *City of Yonkers,* 104 N. Y. 434.) The State in the care of its highways can only be liable for a failure to use ordinary care and reasonable caution in their maintenance and in their repair. It is not liable for injuries resulting from accidents which are not by the exercise of reasonable foresight and prudence to be anticipated. (*French* v. *State of New York,* 120 Misc. 867.)

Under the circumstances herein, we find no basis for a cause of action in negligence against the State.

The claim herein also contains allegations of nuisance which we have hereinbefore set forth at length. The many phases of and the distinctions in the law on that subject are thoroughly discussed in *McFarlane* v. *City of Niagara Falls* (247 N. Y. 340) and we do not deem it necessary to review them. In view of what we have said herein, we conclude that there is no basis in fact or in law upon which to predicate or to maintain liability against the State upon such a ground.

Although it may be said, in view of the position which we have taken herein, that we may be going beyond the necessities of the case before us, we are constrained to hold that it has been established that claimant's decedent was negligent and that his negligence was the sole, proximate cause of the accident which occasioned his death.

Claimant having failed to prove facts sufficient to constitute a cause of action against the State upon any of the grounds in his claim set forth, his claim herein therefore, must be and hereby is dismissed upon the merits. Decision accordingly.